# Exhibit 1

May 16, 2016

To Whom It May Concern,

It has been my pleasure to work with Mr. Todd Reed for seven years at Del Norte High School. As Mr. Reed's supervisor, I collaborated with him regularly regarding student placements and scheduling, goals for students with challenging behaviors and his teaching preferences.

Todd was assigned the majority of his day to inclusion classes, ensuring students with special needs were receiving the accommodations and modifications afforded to them per their IEP (Individualized Education Plans). He did a superior job ensuring the regular education curriculum was being tailored to his students and their learning goals were being met.

The remainder of his teaching assignment was teaching Health to students with special needs. Mr. Reed modified his materials in order to provide high interest information to students. He demonstrated a real passion for the subject matter, using multiple modes of presentation and resources. His knowledge of the content was evident as his instruction, design of lessons and intended outcomes were targeted for the age group and the specific challenges and needs they have at their age.

Todd demonstrated strong abilities in classroom management and organization. He maintained accurate records of student progress and achievement as well as communication with parents and other colleagues. His professionalism was observed at staff meetings, department meetings and IEP meetings.

I am confident in Mr. Reed's abilities to instruct students in any environment. I highly recommend him for a position in your school. It is my personal opinion that he would be an asset to your school and community.

Sincerely,

Angela Coutts, Assistant Principal

Albuquerque Public Schools

821-1810  X34103

coutts@aps.edu

# Exhibit 2

**BOARD OF EDUCATION - CITY OF ALBUQUERQUE**

| WAGES | HOURS | RATE | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|
| REGULAR | 46.00 | 50.684 | 2331.46 | 9325.84 |

REED, TODD
TAX STATUS Married
TAX ALLOW 00005
PERIOD END DATE 02/19/2021
ADVICE NUMBER 07843892
EMPLOYEE NUMBER 000126545

| DEDUCTIONS | AMOUNT | YTD AMOUNT |
|---|---|---|
| FICA | 144.55 | 578.20 |
| MEDICARE | 33.80 | 135.22 |
| FEDERAL W/H | 78.99 | 315.96 |
| STATE W/H | 62.67 | 250.97 |
| EDUCATIONAL RET | 249.47 | 997.88 |
| RETIREMENT H/P | 23.31 | 93.24 |
| L/T DISABILITY | 2.59 | 10.36 |

| DIRECT DEPOSIT ACCOUNT | AMOUNT |
|---|---|
| Checking | $1,736.08 |

**Hourly Employees: Your check for today is for the following dates:**
01/30/21 - 02/12/21

**The leave balances posted on todays paycheck reflects any leave taken thru:**
02/12/2021

| TOTALS | TAXABLE | WAGES | TAXES | DEDUCTS | NET PAY |
|---|---|---|---|---|---|
| Current | 2081.99 | 2331.46 | 320.01 | 595.38 | 1736.08 |
| Year to Date | 8327.96 | 9325.84 | 1280.35 | 2381.83 | 8944.01 |

| | ACCRUED THIS PERIOD | USED THIS PERIOD | BALANCE |
|---|---|---|---|
| SICK | 3.10 | 0.00 | 421.30 |
| PERSONAL | 0.00 | 0.00 | 32.50 |



**BOARD OF EDUCATION- CITY OF ALBUQUERQUE**

Advice No. 07843892

Date 2/26/2021

PAY   *VOID  VOID  VOID  VOID  VOID  VOID  VOID  VOID*

TO THE ORDER OF
**TODD REED**
**9420 LAS CALABAZILLAS NE**
**ALBUQUERQUE, NM  87111**

Advice Amount
$ *****1,736.08
Void After 180 Days

Bank of Albuquerque
ALBUQUERQUE, NEW MEXICO

DIRECT DEPOSIT ADVICE
**NON-NEGOTIABLE**

# Exhibit 3

From: **Shelly Henderson** <henderson_sh@aps.edu>
Date: Mon, Nov 9, 2020 at 7:30 AM
Subject: Re: masks
To: Todd Reed <reed_t@aps.edu>


I am not sure, but I think you need documentation as to why you can't wear a mask. I am not 100% sure on this so that would be an HR question. I know that this is the expectation we have for students so I would think it would be similar for employees. HR and ADA will be your best bet in getting clarification and guidance around this. Have a great week!
Shelly


On Sun, Nov 8, 2020 at 8:48 PM Todd Reed <reed_t@aps.edu> wrote:
I am ready to go back to regular school, but I can't wear a mask. I seem to be getting the run around. How do you suggest I handle this?

Todd

# Exhibit 4

Todd Reed
Las Calabazillas

NE
Albuquerque NM, 87111

Albuquerque Public Schools
Office of Risk Management
City Centre, 400 West
P.O. Box 25704, Albuquerque NM 87125-0704

RE        New Medical Interventions

11/13/2020

Greetings,

We have an agreement that has been in place since approximately 08/05/2020.  The summary of our agreement is that I provide professional services, including adapts physical education curriculum for students with special education eligibility, Teaches at multiple schools and may move equipment from school to school as needed.  Makes changes to classroom settings, equipment, and instruction to allow student's  to succeed, maintains records for students, completes IEP reports and attends IEP meetings for students as needed, in exchange for regular compensational.

I am now being asked to undertake certain medical interventions, presumably as a condition of continuing under the terms of our agreement.

What is the medical necessity of these interventions, including but not limited to taking a vaccine, wearing a mask or submitting to medical examinations or permitting the collection of my vital statistics?

What is the medical efficacy of each of these interventions and can you provide references to the clinical studies and scientific findings?

Has any physician provided an affidavit to the Department of Health or any public health official, identifying me as having any communicable disease, or having been exposed to any toxic substance?

Has the Department of Health obtained a court order imposing any involuntary medical intervention upon me?

Regarding the specific medical intervention, please provide me with data from clinical trials and other scientific findings, including a vaccine insert, for the purposes of satisfy the legal criteria for informed consent.

Please be advised that the U.S. Code of Federal Regulations, 42 CFR §71.30 states that "The Director may authorize payment for the care and treatment of individuals subject to medical examination, quarantine, isolation, and conditional

release." Payment is made without regard to whether or not the individual has any insurance coverage.

If I ever consent to any such treatment, it is incumbent upon the Center for Disease Control and Prevention (CDC) to pay for such testing and other medical interventions, and including the associated costs of isolation and quarantine. This was stated by the CDC director Robert Redfield in March of 2020 at a Congressional investigation in which Redfield admitted to Representative Katie Porter that the CDC was required to pay for this testing. I will also expect the CDC and others who are purportedly acting under the "guidelines" of the CDC to guarantee my health and safety for undertaking such interventions and examinations and I demand to see a copy of the insurance binder showing proof of financial responsibility under these circumstances.

Will you guarantee that undertaking the medical intervention you are suggesting, will prevent me from contracting any disease, or infecting anyone else? If I undertake your medical intervention and contract a disease anyway, will you be responsible for my medical care and costs? If I am accused of infecting someone else and that person sues me, even though I complied with your requests, will you indemnify me against such a lawsuit if I am found responsible for damages? Do you have insurance for these situations and can I see your insurance binder?

Will you guarantee that I will suffer no adverse health consequences from undertaking your medical intervention? Please provide a copy of your insurance binder.

I have a doctor. If you intend to administer such an intervention and are not my physician, or if you are not a licensed physician at all, what remedies do I have if I am injured by a non-licensed individual in this situation? Are you exempt from the law prohibiting the unlicensed practice of medicine?
Can you cite any recent changes in the law that do not protect my right to informed consent?

Can you warrant that your medical interventions are not part of any epidemiological experiment, or if they are, that the experiment (clinical trial) been approved by the Food & Drug Administration?
Can you guarantee the efficacy of any test that uses tissue samples in any of your recommended medical interventions? And which of these tests has been approved by the Food & Drug Administration?

Have you received or applied for any compensation or funding under the Emergency Use Authorization program? In other words, is your organization being paid to promote, recommend or require any medical interventions? If yes, please describe what training, equipment, supplies, funding and insurance you have been given or become eligible to receive under these circumstances.
Is your organization the beneficiary of any insurance claims resulting from any "pandemic insurance" policies?

Is your organization being required by a specific law to implement these medical interventions? If yes, please provide me with a legal citation.

Does your organization have a duty of any kind to protect the public from any risk or danger?

Does your organization have the capacity to protect the public from any risk or danger?

Have you consulted with any physicians or attorneys on the foregoing issues? Does your organization have the legal right and medical competence to require these interventions as a condition of any agreements? Can you provide a copy of an opinion letter from a physician and from an attorney on these matters?

Have there been any scientific findings that the defendant has any one of the "quarantinable diseases" listed by the Centers for Disease Control & Prevention, including, Cholera, Diphtheria, Infectious tuberculosis, Plague, Smallpox, Yellow fever, Viral hemorrhagic fevers, Severe acute respiratory syndromes or Flu that can cause a pandemic.

I'm sure you may need time to review these questions and discuss them with others, but please respond, in writing, within 21 days. In the meantime, please complete and sign the attached indemnification agreement and return it to me with a copy of your insurance binder.

Sincerely,

Todd Reed

Enclosure: Indemnification Agreement

INDEMNIFICATION AGREEMENT

I, _____ the _____ for

_____, (the company) am authorized to bind the

company into this agreement.

The company does hereby indemnify [your name] and guarantee, as

evidenced by the enclosed insurance binder, that [your name] will not be infected

by any disease, and will not be held liable for infecting anyone else, by

undertaking the company's requested medical intervention, such as a vaccine, or

wearing a medical device (face mask) or submitting to a medical examination

(body temperature) or giving other vital statistics or tissue samples.

A copy of the company's insurance binder proving that it has sufficient

insurance is included herewith.

DATED this ___ day of _____ 2020. _____

# Exhibit 5

---------- Forwarded message ---------
From: **Kelly Marvin** <kelly.marvin@aps.edu>
Date: Tue, Nov 17, 2020 at 11:42 AM
Subject: Indemnification Agreement
To: Todd Reed <reed_t@aps.edu>, Socorro Rodriguez
<rodriguez_so@aps.edu>, Michael Brown <michael.brown@aps.edu>

Hello Todd,

I have had the indemnification agreement reviewed. At this time we will not
be able to sign the agreement.

I would like to continue to work with you to determine what ADA
Accommodations will best suit you through the interactive process.

I would like to get the physician's packet returned and your portion of the
packet returned so I can assist you.

Thank You
Kelly Marvin
ADA Specialist
Risk Management

# Exhibit 6

Todd Reed
9420 Las Calabazillas NE
Albuquerque NM 87111

Albuquerque Public Schools
Office of Risk Management
City Centre, 400 West
P.O. Box 25704
Albuquerque NM 87125-0704

December 11th, 2020

RE        Disclosure of Medical Records

Greetings,

I received your medical release authorization form.  Your request for my medical information is not specific enough to merely be used to effectively implement any certain accommodations and it fails to identify your need to know my medical history.  Documentation should only be necessary when the disability and need for accommodation are not known or obvious, but disclosure is not required in order to provide an accommodation.

The only accommodation I need is to breath freely, and without application of  a medical device to obstruct my airway.

Your request is intended to re-evaluate and diagnose my disability or medical condition when my physician has already completed his examination and diagnosis.

Your request fails to identify the individuals who would be given access to my medical records and under what security measures my medical information would be protected and what liabilities you have for a data breach.

The only other concerns I have are my right to informed consent, and that I want to see the findings upon which you have determined the medical necessity of the intervention (mask wearing), and findings that establish the effectiveness of these practices.  I also want to know if there are any adverse health consequences from applying this medical device to cover my airway all day.

Why am I being asked to provide a diagnosis from my licensed medical doctor, but this matter concerns the application of medical device without any medical examination and not a licensed medical doctor?  Why do I need a doctor to not submit to applying your medical device, but you don't need a doctor in order to tell me I have to submit to wearing it?  Have you obtained a court order establishing that I am a direct threat to anyone?

Sincerely,

Todd Reed

# Exhibit 7

From: **Shelly Henderson** <henderson_sh@aps.edu>
Date: Wed, Jan 6, 2021 at 10:23 AM
Subject: Re: Accommodations
To: Todd Reed <reed_t@aps.edu>


Hi Todd,
Yes please contact your principals. Thanks so much!
Shelly


On Tue, Jan 5, 2021 at 9:50 PM Todd Reed <reed_t@aps.edu> wrote:
Hi Shelly,
Thanks for the info.  I would like to continue with remote learning.  I
have contacted the teachers of my students and they are supportive
of my situation.  Let me know if you want me to contact the Principals
as well.  Thanks for your support and guidance.

Sincerely,
Todd

# Exhibit 8

 **Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

**COVID Testing of APS Employees**
1 message

---

**Albuquerque Public Schools** <communityrelations@aps.edu>
Reply-To: COVIDtesting@aps.edu
To: jennifer.oconnell@aps.edu

Tue, Jan 12, 2021 at 2:00 PM

---





# COVID-19 Testing for APS Employees

*A message from Interim Superintendent Scott Elder, Chief Operations Officer Gabriella Blakey, and Human Resources Chief Todd Torgerson*

Jan. 12, 2021

Albuquerque Public Schools will begin testing employees for COVID-19 the week of Jan. 18 to improve tracking infection rates at the local level to assist the New Mexico Department of Health in its decision-making. The state Public Education Department is requiring public school districts and charter schools to test at least 10 percent of their staff each week.

The saliva-based test is taken at home or work. All testing will be through Vault, a testing company contracted by NMPED. No other test may be submitted for this requirement.

## Why Test Employees?

- The tests will help public health officials identify and recommend isolation for people infected by the virus to minimize spread.
- APS plans to test about 1,400 employees a week with a goal of having all employees tested within a few months.
- Students aren't required to be tested at this time.
- Employees who have tested positive for COVID should not test again for 90 days.
- Employees who have received the COVID vaccination must still participate in surveillance testing.

Getting the Test Kit

- On the Thursday before you are required to take the saliva test, you will receive an email from COVIDtesting@aps.edu. The email will include links to 1) a test kit voucher and 2) an APS testing survey.
- Use the voucher to order the test kit.
- The test is free, but you will be asked for insurance information for reimbursement purposes. If you are asked for a credit card or other payment information, close the link and request a new one from COVIDtesting@aps.edu.
- Indicate whether you have exhibited any virus symptoms.
- Sign a result release authorization.
- Enter some personal and worksite information.
- Provide your home or work address for shipping.
- Upload a photo ID.
- Upload a photo of your insurance card.

## How to Take the Test

- When the test kit arrives, keep it in a safe place until the following Monday, when you will be required to take the test.
- After registering with Vault, you will receive an email with instructions on how to take the COVID test and a link to the Virtual Waiting Room to connect with a Vault test supervisor over a Zoom video call.
- Make sure you do not eat, drink, smoke, or chew anything 30 minutes before the Zoom call.
- During the Zoom call, you will receive instructions on administering, packaging, and mailing the saliva test.

## Shipping the Sample

- Ship the test kit back using the provided shipping label.
- The test should be dropped off at UPS or your worksite for UPS pickup by Wednesday.
- Don't place the package in a UPS drop-off; it must be delivered or picked up by UPS.
- Complete the APS survey, indicating that you have taken and sent the test.

## Test Results

- You will receive your results by email two to three days after your sample arrives at the lab.
- Forward the email with your test results to your supervisor.

***Note: While it is normally recommended that people who are being tested wait at home for test results, this is not required for surveillance testing.***

> Download Surveillance Testing Checklist

*APS.edu*   COVIDtesting@aps.edu

**Share this email:**



Manage your preferences | **Opt out** using **TrueRemove®**

Got this as a forward? **Sign up** to receive our future emails.

View this email **online**.

Suite 630-E, 6400 Uptown Blvd. NE P.O. Box 25704
Albuquerque, NM | 87125-0705 US

This email was sent to jennifer.oconnell@aps.edu.
*To continue receiving our emails, add us to your address book.*



**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## COVID Testing Update: Two Options for APS Employees
1 message

**Albuquerque Public Schools** <communityrelations@aps.edu>
Reply-To: covidtesting@aps.edu
To: jennifer.oconnell@aps.edu

Wed, Jan 20, 2021 at 5:31 PM





## COVID Testing Update: Employees Now Have Two Options

*A message from Interim Superintendent Scott Elder, Chief Operations Officer Gabriella Blakey, and Human Resources Chief Todd Torgerson*

Jan. 20, 2021

Last week, Albuquerque Public Schools began testing employees for COVID-19 as required by the New Mexico Public Education Department. Principals and supervisors were among the first to take the at-home saliva test. Based on their feedback, we have made some adjustments. Most significantly, **APS employees now have the choice of taking a self-administered saliva test or going to a state-run test site for a nasal swab**.

APS is required to test 10 percent of its staff each week. When selected, APS employees will have two options for completing the COVID-19 test:

1. A saliva test through Vault Health. This test is a self-administered test taken at home or work.
2. A nasal swab test conducted at a New Mexico Department of Health site (this option was just approved by the state for APS employees).

The next group of employees required to take the test should receive an email this Thursday, Jan. 21, from **COVIDtesting@aps.edu**. The email will provide more information on the two options.

Employees need to request the Vault test or register for an appointment with the Department of Health within two days of receiving the email from COVIDtesting@aps.edu.

We know this is an inconvenience, but it is required by the state to help public health officials identify and recommend isolation for people infected by the virus to minimize the spread.

We have posted more information on COVID testing to the employee intranet, including a comparison of the two options and details on the Vault self-administered saliva test (with updated information on photo IDs and test drop-offs):

- Two Options for Employee COVID Testing
- Vault At-Home COVID Test

You can get information on the nasal swab testing from the Department of Health: COVID-19 Screening & Testing.

Thank you for your patience as we work through this evolving process. If you know an employee who didn't get this email, please share the information.

We appreciate your cooperation.

*APS.edu    COVIDtesting@aps.edu*

**Share this email:**



**Manage** your preferences | **Opt out** using **TrueRemove®**
Got this as a forward? **Sign up** to receive our future emails.
View this email **online**.

Suite 630-E, 6400 Uptown Blvd. NE P.O. Box 25704
Albuquerque, NM | 87125-0705 US

This email was sent to jennifer.oconnell@aps.edu.
*To continue receiving our emails, add us to your address book.*





**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

## Surveillance Testing Update
1 message

**Johanna King** <king_joh@aps.edu>                                    Thu, Feb 18, 2021 at 5:04 PM
To: allusers <allusers@aps.edu>

APS is required to conduct COVID surveillance testing on 25% of all employees each week, which means you likely will need to take the test multiple times. Because employees are being selected randomly, it's possible you will be required to take the test two weeks in a row.

If you receive an email from covidtesting@aps.edu saying that you have been selected to undergo the New Mexico Public Education Department required COVID-19 surveillance testing, please follow the directions for completing the test within the designated time period.

We have posted more information about COVID testing on the APS intranet: COVID Testing for Employees.

Please send questions to covidtesting@aps.edu.



**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## Reopening Offices
1 message

---

**Johanna King** <king_joh@aps.edu>
To: City Center <citycenter@aps.edu>

Wed, Mar 31, 2021 at 9:34 AM

March 30, 2021

**MEMORANDUM**

To: City Center Employees

From: Gabriella Blakey, Interim Chief Operations Officer

Re: Reopening Offices

As schools reopen for in-person learning and employees are vaccinated, district employees are also returning to their offices.  However, it is important to keep in mind a few reminders as employees return to offices.

- All employees must complete the screening questionnaire which is sent daily to all employees.
- Visitors are able to come in on a limited basis.  All visitors must check in at the front desk and check out when they leave.  Sign-in and temperature checks are required of all visitors.
- Masks are required in common areas, including hallways and restrooms. If employees share an office, then they will be expected to wear a mask while in their office if other employees are present.
- Employees must avoid gathering together.
  - Meetings should be held virtually.
  - Lounges and kitchens should not be used other than to store or warm food. People may not eat in groups in these areas.
  - Conference rooms and spaces are closed.
- There should be no more than two people in an elevator at a time. Masks should be worn in the elevator.
- Employees should continue to wash their hands regularly and to follow any CDC or DOH guidance that evolves around returning to work.
- Employees should avoid using other employee's phones, offices, or other work tools and equipment. If necessary, clean and disinfect when possible.

To the greatest extent possible, employees should practice social distancing. Social distancing means avoiding large gatherings and maintaining distance (approximately 6 feet) from others when possible.


**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## Mask Wearing, District Office
1 message

---

**Johanna King** <king_joh@aps.edu>
To: allusers <allusers@aps.edu>

Mon, May 17, 2021 at 9:50 AM

---

May 17, 2021

TO: APS Employees

FROM: Dr. Gabriella Blakey, Chief Operations Officer; Dr. Kristine Meurer, Executive Director — Student, Family, and Community Supports Division; Judith Edwards, Senior Director of Nursing Services

RE: Wearing Masks

All staff, students, and visitors on school campuses **must continue to wear face masks** regardless of vaccination status.

APS employees who don't work in schools and are fully vaccinated (14 days after their last vaccine dose) **may choose** to go without a face mask. If an employee is not fully vaccinated, they **must continue** to wear a face mask while in public spaces including bathrooms, elevators, hallways and common spaces. While working alone in an office, individuals don't need to wear a face mask.

Beginning June 1, Albuquerque Public Schools administrative offices will be open to the public from 8 a.m. to 4:30 p.m. Monday through Friday. All employees who work in administrative offices are expected to return to their worksite unless they have made other accommodations through Human Resources.

Visitors to administrative offices are asked to follow state and federal guidelines on mask-wearing (those who aren't fully vaccinated need to wear masks; those who are fully vaccinated may choose not to wear masks).

Employees are asked to continue to meet virtually in groups until the state is fully open and all restrictions are lifted.

 **Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

**Masks Required in All APS Buildings**
1 message

---

**Albuquerque Public Schools** <communityrelations@aps.edu>                    Wed, Jul 28, 2021 at 5:48 PM
Reply-To: communityrelations@aps.edu
To: jennifer.oconnell@aps.edu



---

*Para leer esta información en español, visite APS.edu y use Google*
*Translate ubicado en la parte inferior a la izquierda de la página web:*
**_Máscaras requeridas en todos los edificios de APS_**

---

# Masks Required in All APS Buildings

July 28, 2021

All students, employees, and visitors must wear masks while inside Albuquerque Public Schools buildings, whether they are vaccinated or not. This includes all APS schools and offices. Masks also are required on school buses.

The universal mask mandate was recommended by the APS administration and approved by the APS Board of Education on Wednesday, July 28.

Masks aren't required outdoors. Indoor meetings and gatherings are still allowed as long as attendees wear masks.

The district decided to require masks after the Centers for Disease Control and Prevention revised its guidance, recommending universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status. The American Academy of Pediatrics also recommends that everyone older than the age of 2 wear masks. And New

Mexico Governor Michelle Lujan Grisham, citing CDC guidance, recommended that New Mexicans wear a mask indoors out of an abundance of caution.

The mask mandate was prompted by a recent increase in COVID-19 cases that health officials blame on the more contagious delta variant and flattening vaccination rates across the nation. APS will reconsider the requirement once the number of cases decreases.

The district encourages students over the age of 12, employees, and families to get the COVID-19 vaccine, which should help bring down the number of cases. Four APS high schools are hosting immunization clinics in the coming days where students can get all school-required immunizations plus the COVID-19 vaccine:

- Thursday, July 29, from 2-6 p.m. at Albuquerque High School, 800 Odelia Rd. NE
- Monday, Aug. 2, from 2-6 p.m. at La Cueva High School, 7801 Wilshire Ave. NE
- Wednesday, Aug. 4, from 2-6 p.m. at Cibola High School, 1510 Ellison Dr. NW
- Thursday, Aug. 5, from 2-6 p.m. at West Mesa High School, 6701 Fortuna Rd. NW



More Information on Vaccination Clinics

The first day of school for most APS students is Wednesday, Aug. 11, though students at 20 elementary schools on an extended-year calendar return on Wednesday, Aug. 4. APS is committed to in-person learning without interruption for the 2021-2022 school year and is creating guidelines to make that happen.

We will provide more information on returning to campus during the pandemic as it becomes available. Your best sources of information are the APS website and your child's school.

**Share this email:**

**Manage** your preferences | **Opt out** using **TrueRemove**™

Got this as a forward? **Sign up** to receive our future emails.

View this email **online**.

Suite 630-E, 6400 Uptown Blvd. NE P.O. Box 25704
Albuquerque, NM | 87125-0705 US

This email was sent to jennifer.oconnell@aps.edu.
*To continue receiving our emails, add us to your address book.*



 **Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

### Survey to Determine Who Takes COVID Tests
1 message

**Johanna King** <king_joh@aps.edu>                                   Tue, Aug 10, 2021 at 3:29 PM
To: allusers <allusers@aps.edu>

---

Aug. 10, 2021

Dear APS Employees,

Albuquerque Public Schools is required to conduct COVID-19 surveillance testing on 25% of unvaccinated employees each week.

If you are an APS employee, you need to fill out the COVID-19 Testing Exemption Survey as soon as you can, whether you are vaccinated or not. **Even if you completed the survey last school year, you must fill it out again for this school year.** Employees who don't fill out the survey, even those who are vaccinated, will be included in surveillance testing.

Employees who are fully vaccinated AND complete the survey are exempt from surveillance testing. You are considered fully vaccinated 14 days after your final shot.

Employees who aren't fully vaccinated, choose not to disclose whether they are vaccinated, or fail to complete the survey will automatically be placed in the surveillance testing sample pool.

Surveillance testing will begin the week of Aug. 16. Randomly selected employees who receive an email from COVIDtesting@aps.edu must follow directions for completing the test and reporting results to their supervisor.

If you haven't received the vaccine yet but plan to do so, keep this survey link. Once you are fully vaccinated (14 days after your final shot), fill out the survey, and you will be removed from the testing pool.

# Complete the Survey

*Please send questions to kristine.meurer@aps.edu.*


**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

**Important Update on COVID Vaccines & Testing**
2 messages

---

**Johanna King** <king_joh@aps.edu>
To: allusers <allusers@aps.edu>

Tue, Aug 17, 2021 at 5:29 PM

Aug. 17, 2021

Dear APS Employees,

Today, Gov. Michelle Lujan Grisham announced that all public school employees will either need to be fully vaccinated for COVID-19 or undergo weekly coronavirus testing. The new rule goes into effect **on Monday, Aug. 23**.

To determine who is fully vaccinated, ALL Albuquerque Public Schools employees must fill out the **COVID-19 Testing Exemption Survey** as soon as possible. **Even if you completed the survey last school year, you must fill it out again for this school year!**

**Employees who don't fill out the survey, even those who are vaccinated, will be required to take a weekly COVID test.**

Employees who are fully vaccinated AND complete the survey are exempt from testing. You are considered fully vaccinated 14 days after your final shot.

Employees who aren't fully vaccinated, choose not to disclose whether they are vaccinated, or fail to complete the survey will be required to take a weekly COVID test. These employees will receive a weekly email from COVIDtesting@aps.edu, which will provide directions for completing the test and reporting results.

If you haven't received the vaccine yet but plan to do so, keep this survey link. Once you are fully vaccinated (14 days after your final shot), fill out the survey, and you will be removed from the testing list. Register for the free COVID vaccine.

# Complete the Survey

**Please share this information with employees who don't regularly check their email!**

*Send questions to kristine.meurer@aps.edu*

---

**Jennifer Oconnell** <jennifer.oconnell@aps.edu>
To: Gerald Shay <shay@aps.edu>

Tue, Aug 31, 2021 at 8:55 AM

**Jennifer O'Connell**
Employee Relations Specialist
Human Resources Department
6400 Uptown Blvd. NE, Suite 250E
505-880-2572
jennifer.oconnell@aps.edu

**Please consider the environment before printing this e-mail**

CONFIDENTIALITY NOTICE:  This email and attached documents may contain confidential information.  All information is intended only for the use of the named recipient.  If you are not the named recipient, you are not authorized to read, disclose, copy, distribute or take any action in reliance on the information, and any action other than immediate delivery to the named recipient is strictly prohibited.  If you have received this email in error, do not read the information, and please immediately notify the sender by telephone to arrange for a return of the original documents.  If you are the named recipient you are not authorized to reveal any of this information to any other unauthorized person.  If you did not receive all pages listed or if pages are not legible, please immediately notify the sender by phone.
[Quoted text hidden]

 **Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## Plan for Enhanced COVID Safe Practices
1 message

**Albuquerque Public Schools** <communityrelations@aps.edu>
Reply-To: communityrelations@aps.edu
To: jennifer.oconnell@aps.edu

Mon, Jan 3, 2022 at 2:29 PM



---

*Para leer esta información en español, visite APS.edu y use Google Translate ubicado en la parte inferior a la izquierda de la página web.*

---

Jan. 3, 2022

## Plan for Enhanced COVID Safe Practices

Dear APS Community,

We hope your holiday season was healthy, restful, and joyful. Teachers returned today, and tomorrow we welcome students back to school. We know the continuing rise of COVID-19 cases nationwide is cause for concern, and we want to assure you the district is doing everything possible to keep our students and staff safe, limit the spread of the disease, minimize disruptions, and most importantly, continue in-person teaching and learning.

The APS COVID-19 response team continues to consult with health experts. Below is a summary of the layered approach to COVID safety and threshold considerations for schools to implement increased mitigation strategies and classroom/school closures, if necessary. Please note recommended thresholds are calculated exclusively of those on-site while infectious.

- Upon a school reaching a threshold of 3% or more of its population (students & staff) while infectious in the past 14 days, enhanced COVID-19 safe practices shall be recommended. District personnel will conduct a site visit, meet with school administration to ensure compliance with current practices, and provide recommendations for enhanced mitigation strategies.
- A school reaching a threshold of 5% or more of its population (students & staff) while infectious in the past 14 days will require enhanced COVID-19 safe practices. District personnel will conduct a site visit, meet with school personnel to ensure compliance with current practices, and provide recommendations and identify required enhanced mitigation strategies.
- 7-14 days after a school is required to implement enhanced COVID-19 safe practices, the rate of current COVID-19 cases will be reviewed, and a follow-up site visit shall be conducted to determine if additional mitigation strategies are necessary.
- 14-21 days after a school is required to implement enhanced COVID-19 safe practices, the rate of current  COVID-19 cases will be reviewed. Enhanced mitigation strategies will be lifted when district personnel confirm current COVID-19 cases are below 3% of the school's population (students & staff) in the past  14-21 days.
- Additional threshold levels will be considered if needed to determine classroom/school closures (e.g., lack of staff to provide a safe adult to student ratio, an indication of school spread, or other related contributing factors).

This plan, combined with the tools already available and in-use, such as vaccinations, testing, contact testing, masking, social distancing, and improved ventilation and sanitation, can provide optimum protection from the still active virus.

**Download the Plan for Implementing Enhanced COVID Safe Practices (PDF)**

Share this email:

Manage your preferences | Opt out using TrueRemove™
Got this as a forward? Sign up to receive our future emails.
View this email online.

Suite 630-E, 6400 Uptown Blvd. NE P.O. Box 25704
Albuquerque, NM | 87125-0705 US

This email was sent to jennifer.oconnell@aps.edu.
*To continue receiving our emails, add us to your address book.*



 Albuquerque
Public
Schools

Jen Oconnell <jennifer.oconnell@aps.edu>

## COVID Protocols for Employees
1 message

Johanna King <king_joh@aps.edu>
To: City Center <citycenter@aps.edu>

Thu, Jan 13, 2022 at 3:07 PM

| | |
|---|---|
| To: | APS Employees |
| From: | Dr. Gabriella Blakey, Chief Operations Officer *(sent by Communications Director Johanna King)* |
| Date | Jan. 13, 2022 |
| Re: | COVID Protocols for Employees |

As we are all aware, New Mexico is in the midst of a COVID-19 surge. In an effort to keep our employees, students, and community safe we are asking everyone to help in the following ways through February 28th, 2022. As always, as things evolve these protocols may change according to the current health conditions.

**While at an APS facility:**

- While employees are in an APS facility, they are required to wear masks in common areas, including hallways and restrooms. If they share an office, then they are required to wear a mask while in their office if other employees must be present
- Employees should avoid gathering.
- Meetings should be held virtually.
- Lounges and kitchens should not be used, other than to store or warm food. People should not eat in groups in these areas.
- Elevators are limited to 2 people at a time.
- Continue to fill out the daily symptom report. If you exhibit any symptoms, please test and do not return to work until you receive your results. Berna Facio is available for testing.

**COVID protocols for positive cases (per NMPED Toolkit January 2022):**

- All positive cases must be reported by the supervisor within 4 hours of notification. Please email nursingservices@aps.edu and you will receive instructions on reporting the positive case.
- Please reference the APS Rapid Response Checklist for reporting.

**What do I do if I have tested positive?**

- *Isolation* – individuals who have received a positive test

  - Individuals must isolate 5 days after onset of symptoms and until fever-free for 24 hours without fever-reducing medications and symptoms are resolving. Vigilant mask wearing required for 5 days post isolation period
  - Individuals who never experience symptoms isolate for 5 days after test date - vigilant mask wearing required for 5 days post isolation period

**What do I do if I have been notified I am a close contact?**

- *Quarantine* – individuals who have been in close contact (someone who over a 24-hour period, as a cumulative exposure of fifteen minutes or longer within six feet of a confirmed COVID-19 case with or without a face covering)

  - Unvaccinated individuals in close contact to a positive COVID-19 case quarantine for 5 days - it's recommended close contacts get tested 5 days following most recent exposure
  - Fully vaccinated individuals in close contact to a positive COVID-19 case do not need to quarantine but should watch for symptoms and it is recommended to be tested on day 5 following the exposure.
  - Individuals in a household with a positive case who are **unvaccinated or do not meet fully vaccinated** requirements must quarantine for 10 days from the symptom onset date or positive test date of the household member who tested positive - if another individual in the household tests positive, the quarantine clock resets, and the 10 days of quarantine starts from the symptom onset date or positive test date if asymptomatic for the second household member who tested positive

  **How do I know if I am fully vaccinated?**

  - Age 18+ must have a booster at least 5 months after receiving Pfizer/Moderna primary series vaccine (2 doses)
  - Age 18+ must have a booster at least 2 months after receiving a single-dose Johnson Johnson vaccine

  **How do I get a vaccine?**

  - You may create an appointment here: COVID 19 Vaccine Registration
  - Or, you may stop by any of our pop-clinics on school sites. Check www.aps.edu for the updated list of on-site school clinics.

  **Where do I get tested?**

  - APS employees may get tested at Berna Facio Professional Development Center Monday -Friday 7:15-3:00 or they can sign up for an appointment here: COVID-19 Testing Sites



**Albuquerque
Public
Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## All APS Schools Implementing Enhanced COVID-Safe Practices Starting Wednesday, January 19th
1 message

---

**Albuquerque Public Schools** <no-reply@aps.edu>
Reply-To: Albuquerque Public Schools <no-reply@aps.edu>
To: Jennifer.Oconnell@aps.edu

Tue, Jan 18, 2022 at 8:38 AM

---

Albuquerque Public Schools, at the recommendation of the New Mexico Public Education Department, will be taking extra precautions to help reduce virus spread. All schools will begin implementing enhanced COVID-safe practices starting tomorrow (Wednesday, Jan. 19.)

The changes will include wearing properly fitted masks both outdoors and indoors, restricting school visitors, and prohibiting large gatherings and spectators at school events. More information is posted to the APS website.

We hope these enhanced safe practices will help protect the health of our students and staff so we can keep schools open where we know students learn best.

Several of our schools have already been required to implement these safe practices because at least 5 percent of their population has tested positive for COVID in the past two weeks. Many more schools are approaching that threshold.

The district hopes to relax these additional precautions in a few weeks if COVID cases decline.

These have been challenging times, and we want to thank you for your support as we all work to keep APS students and staff healthy and safe.

---

Albuquerque Public Schools would like to continue connecting with you via email. If you are the parent of an APS student and prefer to be removed from our list, please contact your child's school directly to unsubscribe. APS employees with an aps.edu e-mail address cannot unsubscribe. All other recipients may unsubscribe by following this link to stop receiving all e-mail messages distributed through our SchoolMessenger service Unsubscribe

SchoolMessenger is a notification service used by the nation's leading school systems to connect with parents, students, and staff through voice, SMS text, email, and social media.


**Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

**Updating Proof of COVID Vaccination, Including Booster Date**
1 message

---

Johanna King <king_joh@aps.edu>
To: allusers <allusers@aps.edu>

Tue, Jan 18, 2022 at 12:03 PM

---

# Updating Proof of COVID Vaccination, Including Booster Date

**Employees should update the COVID-19 Surveillance Testing Exemption Survey and keep an eye out for instructions on uploading a copy of their vaccination card in the coming weeks.**

Under the public health order released December 2, 2021, all school workers must provide proof of being fully vaccinated, including the booster dose if eligible, against COVID-19 OR participate in weekly COVID-19 surveillance testing.

Providing proof of being fully vaccinated will require fully vaccinated employees to upload a copy of their COVID-19 vaccination record (i.e., vaccination card) to an electronic district file. Fully vaccinated employees should have a copy of their vaccination card available and **keep an eye out for instructions to upload a copy of their vaccination card in upcoming weeks.** Employees who have misplaced their vaccination card may obtain a copy by visiting VaxViewNM.

## New Definition of Fully Vaccinated

The definition of fully vaccinated has changed and is currently defined as follows: Individuals are considered fully vaccinated 2 weeks after a second dose of a two-dose Pfizer or Moderna primary series vaccine or 2 weeks after a single-dose Johnson and Johnson vaccine. If age 18 or over, after 5 months of receiving the Pfizer or Moderna primary series vaccine or after 2 months of receiving the Johnson and Johnson vaccine, individuals must receive a booster dose to be considered fully vaccinated.

## COVID-19 Surveillance Testing Exemption Survey

All APS employees (full-time and part-time) must complete the COVID-19 Surveillance Testing Exemption Survey by **Friday, January 21**. The survey has been updated and will require all employees (full-time and part-time) to complete and submit the updated survey regardless of whether employees have completed it in the past.

## Directions for Completing the Survey

- Complete the COVID-19 Testing Exemption Survey. If applicable, be prepared with your COVID-19 vaccination information and ensure you're logged into your APS Google and Gmail accounts.

- If you receive a message saying you have already responded to the survey, click on EDIT YOUR RESPONSE

- If you are fully vaccinated, upon completing the COVID-19 testing exemption survey, you will be removed from the surveillance testing list.

- Employees may return to the COVID-19 Testing Exemption Survey to modify responses at any time.

- If you have already completed the survey but remain on the surveillance testing list, return to the survey and verify the date listed for your final vaccine dose and your booster dose if received is correct.

## Weekly Surveillance Testing

Employees are required to participate in weekly COVID-19 surveillance testing if one of the following applies:

- Employee is not vaccinated

- Employee is partially vaccinated

- Employee is fully vaccinated, including the booster dose if eligible, but has not completed the surveillance testing exemption survey

- Employee is fully vaccinated, including the booster dose if eligible, but has not provided proof of vaccination status by uploading a copy of vaccination record to designated electronic district file (directions forthcoming in upcoming weeks)

- Employee opts not to disclose vaccination status to APS

Employees required to participate in weekly COVID surveillance testing will be responsible for submitting results to their supervisor by Friday of each testing week. An updated surveillance testing list will be made available to department supervisors and school principals the week of January 24.

Questions may be submitted to vaccineinfo@aps.edu **(do not send copies of vaccination cards to this email address).**

Again, **employees will receive directions on how to upload a copy of vaccination information (i.e. vaccination card) in upcoming weeks.**



**Albuquerque
Public
Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

## CORRECTION: New link COVID-19 Surveillance Testing Exemption Survey
1 message

---

Johanna King <king_joh@aps.edu>
To: allusers <allusers@aps.edu>                                    Tue, Jan 18, 2022 at 12:40 PM

The link for COVID-19 Surveillance Testing Exemption Survey was incorrect. Here is the correct link: COVID-19 Surveillance
Testing Exemption Survey. Apologies for the inconvenience.

--
Johanna King
Communications Director
Albuquerque Public Schools

Under the public health order released December 2, 2021, all school workers must provide
proof of being fully vaccinated, including the booster dose if eligible, against COVID-
19 OR participate in weekly COVID-19 surveillance testing.
Providing proof of being fully vaccinated will require fully vaccinated employees to upload a
copy of their COVID-19 vaccination record (i.e., vaccination card) to an electronic district file.
Fully vaccinated employees should have a copy of their vaccination card available and **keep
an eye out for instructions to upload a copy of their vaccination card in upcoming
weeks.** Employees who have misplaced their vaccination card may obtain a copy by
visiting VaxViewNM.

## New Definition of Fully Vaccinated

The definition of fully vaccinated has changed and is currently defined as follows: Individuals
are considered fully vaccinated 2 weeks after a second dose of a two-dose Pfizer or Moderna
primary series vaccine or 2 weeks after a single-dose Johnson and Johnson vaccine. If age 18
or over, after 5 months of receiving the Pfizer or Moderna primary series vaccine or after 2
months of receiving the Johnson and Johnson vaccine, individuals must receive a booster
dose to be considered fully vaccinated.

## COVID-19 Surveillance Testing Exemption Survey

All APS employees (full-time and part-time) must complete the COVID-19 Surveillance Testing
Exemption Survey by **Friday, January 21**. The survey has been updated and will require all

employees (full-time and part-time) to complete and submit the updated survey regardless of whether employees have completed it in the past.

Directions for Completing the Survey

- Complete the COVID-19 Testing Exemption Survey. If applicable, be prepared with your COVID-19 vaccination information and ensure you're logged into your APS Google and Gmail accounts.

- If you receive a message saying you have already responded to the survey, click on EDIT YOUR RESPONSE

- If you are fully vaccinated, upon completing the COVID-19 testing exemption survey, you will be removed from the surveillance testing list.

- Employees may return to the COVID-19 Testing Exemption Survey to modify responses at any time.

- If you have already completed the survey but remain on the surveillance testing list, return to the survey and verify the date listed for your final vaccine dose and your booster dose if received is correct.

## Weekly Surveillance Testing

Employees are required to participate in weekly COVID-19 surveillance testing if one of the following applies:

- Employee is not vaccinated

- Employee is partially vaccinated

- Employee is fully vaccinated, including the booster dose if eligible, but has not completed the surveillance testing exemption survey

- Employee is fully vaccinated, including the booster dose if eligible, but has not provided proof of vaccination status by uploading a copy of vaccination record to designated electronic district file (directions forthcoming in upcoming weeks)

- Employee opts not to disclose vaccination status to APS

Employees required to participate in weekly COVID surveillance testing will be responsible for submitting results to their supervisor by Friday of each testing week. An updated surveillance testing list will be made available to department supervisors and school principals the week of January 24.

Questions may be submitted to vaccineinfo@aps.edu (do not send copies of vaccination cards to this email address).

Again, **employees will receive directions on how to upload a copy of vaccination information (i.e. vaccination card) in upcoming weeks.**


**Albuquerque
Public
Schools**

**Jen Oconnell <jennifer.oconnell@aps.edu>**

---

## Deadline extended for completing COVID-19 Surveillance Testing Exemption Survey

**Johanna King <king_joh@aps.edu>**
To: allusers <allusers@aps.edu>

Tue, Jan 25, 2022 at 8:00 AM

Please be informed of the following updates regarding the COVID-19 Surveillance Testing Survey and providing proof of vaccination status against COVID-19:

- The deadline to complete the COVID-19 Surveillance Testing Exemption Survey has been extended to **this Friday, Jan. 28**.
- Be prepared with your COVID-19 vaccination information and make sure you are logged into your APS Google and Gmail accounts. **If you receive a message saying you have already responded to the survey, click on EDIT YOUR RESPONSE.**
- Next week, an updated surveillance testing list will be made available to department supervisors and school principals (initially scheduled for this week).
- **Beginning Feb. 4**, employees who aren't fully vaccinated, including the booster if eligible, or don't complete the testing exemption survey will be required to participate in weekly COVID surveillance testing.
- **Keep an eye out for instructions to upload a copy of your vaccination card in the coming weeks.** Employees who have misplaced their vaccination card may obtain a copy by visiting VaxViewNM.
- Want to get the COVID vaccine or booster? Our partners are hosting shot clinics at APS schools and facilities: COVID Shot Clinics
- Get more information on Proof of COVID Vaccination, Including Booster, required by public health order.

**Please send questions or comments to vaccineinfo@aps.edu** (do not send copies of vaccination cards to this email address).

 **Albuquerque Public Schools**

Jen Oconnell <jennifer.oconnell@aps.edu>

---

**APS Lifts Mask Mandate**
1 message

---

Albuquerque Public Schools <communityrelations@aps.edu>
Reply-To: communityrelations@aps.edu
To: jennifer.oconnell@aps.edu

Thu, Feb 17, 2022 at 3:43 PM

---


**ALBUQUERQUE PUBLIC SCHOOLS**

---

*Para leer esta información en español, visite APS.edu y use Google Translate ubicado en la parte inferior a la izquierda de la página web.*

---

Feb. 17, 2022

# APS Lifts Mask Mandate

Albuquerque Public Schools is lifting its mask mandate, effective immediately, following Thursday's announcement by Gov. Michelle Lujan Grisham and the state Public Education Department.

Students and staff may choose to continue wearing masks, but they will no longer be required.

Gov. Lujan Grisham cited a recent decrease in New Mexico's COVID-19 cases when announcing the end of the indoor mask mandate Thursday.

New Mexico Education Secretary Kurt Steinhaus said in a memo to school district leaders that the number of hospitalized New Mexicans has decreased dramatically in the past few weeks. He also pointed to increased availability of treatments for high-risk New Mexicans with COVID-19.

APS has also seen a dramatic decrease in the number of COVID cases among students and staff, with the number last week less than a fifth of the number at the district's peak in January.

The education secretary did say that New Mexicans should still be careful and get tested as needed. APS will continue monitoring and reporting cases to the state Department of Health.

**Share this email:**

Manage your preferences | Opt out using TrueRemove™
Got this as a forward? Sign up to receive our future emails.
View this email online.

Suite 630-E, 6400 Uptown Blvd. NE P.O. Box 25704
Albuquerque, NM | 87125-0705 US

This email was sent to jennifer.oconnell@aps.edu.
To continue receiving our emails, add us to your address book.

Exhibit 9

---------- Forwarded message ---------
From: **Stephanie Fascitelli** <fascitelli@aps.edu>
Date: Fri, Mar 12, 2021 at 11:25 AM
Subject: Returning to Full Entry
To: Bernadette Lucero <turner_b@aps.edu>, Bonnie Anderson
<anderson_bonnie@aps.edu>, Claudia Gutierrez
<gutierrez_cl@aps.edu>, Eulalia Gonzales
<eulalia.gonzales@aps.edu>, Stephanie Fascitelli
<fascitelli@aps.edu>, Annittra Atler <atler_a@aps.edu>, Cynthia
Hoppman <benefield_c@aps.edu>, Debora Garrison
<garrison_deb@aps.edu>, Domitilia Barela-tierney
<tierney@aps.edu>, Erica Vice <vice@aps.edu>, Lila Ramirez
<lila.ramirez@aps.edu>, Linda Elliott <elliott_l@aps.edu>, Lisa
Oliphant <oliphant@aps.edu>, Shelly Henderson
<henderson_sh@aps.edu>, Yvonne Madrid <madrid_y@aps.edu>,
Jennifer Blythe <jennifer.blythe@aps.edu>, Costa Pavlakos
<pavlakos@aps.edu>, Loretta Serna-gonzales <loretta.serna-
gonzales@aps.edu>


The board was presented the full-entry plan which did not require a
vote nor did the board ask for more information to be presented at
the next full board meeting....so - **the plan for full re-entry for the**

**entire district is approved and moving forward.**

Beginning March 29 ALL staff will be expected to return to work.  For employees that have school aged children - please plan to stay home with them until they return in full-entry on Apr 5.  If you have a school-aged child and you do not intend to have them go to school in-person either child care accommodations will need to be acquired or you can apply for a leave or take the leave you have in order to stay home with your child.  Please work with your supervisor on a case by case basis.  However, just as school-aged children are allowed to be at work with their parents at school sites - your school-aged children can come to work with you, as appropriate.  Please make sure that they follow all COVID safe practices and stay with you, in your office, at all times.

If you have a REDW1 or 2 accommodation - please work with your supervisor on a personal re-entry plan.  If you are a 1 or 2 on REDW - you do not need to return until you are fully vaccinated meaning that you have received all required doses and have waited the full 14 days after your final dose.  Again, make sure your supervisor is aware of your in-person start date.

City Center employees will be expected to return to in-person work however your supervisor or director can/may come up with a graduated plan for returning everyone up to 100% of the time.  We are still in a pandemic so I am asking the directors to allow for accommodations and scheduling that would allow for in person/ remote work for the remainder of the school year or until our county has been in green for at least 2 weeks.  I am thinking that a 50/50 guideline might be the best for employees (50% of the time in person/ 50% remote work) provided you can continue to do your job both efficiently and effectively.  Remember that all school sites will have all of their employees back 100% in person so the district's departments need to follow that same requirement or at least have a **plan** for a 100% return.

All COVID safe practices will need to be adhered to - social

distancing to the greatest extent possible, face mask wearing, hand washing, hand sanitizing, not eating together unless you are able to social distance in a large room, limiting gatherings in offices, using lounges for warming up and food storage only, 2 per elevator only, etc.

Again...the best thing that you can do is to speak to your supervisor and nail down a personal re-entry plan that will work for the department and for you.  We will need to continue surveillance testing, close contact tracing if we have positives, and all that fun stuff....thanks for all you do and will do to keep our department and level of service great!

Directors/Managers/Administrative Assistants - feel free to send this to your non-school-based personnel, as needed.

Let me know as questions arise and I will get you an answer lickity split!
❤, **Stephanie Fascitelli**
*Interim Associate Superintendent of Special Education*

**Albuquerque Public Schools**
City Center 200W
fascitelli@aps.edu

Exhibit 10

From: **Shelly Henderson** <henderson_sh@aps.edu>
Date: Wed, Mar 31, 2021 at 10:30 AM
Subject: memo fr Dr. Blakey
To: Todd Reed <reed_t@aps.edu>


Hi Todd,
Here is the memo;


March 30, 2021

**MEMORANDUM**

To: City Center Employees

From: Gabriella Blakey, Interim Chief Operations Officer

Re: Reopening Offices


As schools reopen for in-person learning and employees are vaccinated, district employees are also returning to their offices. However, it is important to keep in mind a few reminders as employees return to offices.

- All employees must complete the screening questionnaire which is sent daily to all employees.

- Visitors are able to come in on a limited basis.  All visitors must check in at the front desk and check out when they leave.

Sign-in and temperature checks are required of all visitors.

- Masks are required in common areas, including hallways and restrooms. If employees share an office, then they will be expected to wear a mask while in their office if other employees are present.

- Employees must avoid gathering together.

  o Meetings should be held virtually.

  o Lounges and kitchens should not be used other than to store or warm food. People may not eat in groups in these areas.

- o Conference rooms and spaces are closed.

- There should be no more than two people in an elevator at a time. Masks should be worn in the elevator.

- Employees should continue to wash their hands regularly and to follow any CDC or DOH guidance that evolves around returning to work.

- Employees should avoid using other employee's phones, offices, or other work tools and equipment. If necessary, clean and disinfect when possible.

To the greatest extent possible, employees should practice social distancing. Social distancing means avoiding large gatherings and maintaining distance (approximately 6 feet) from others when possible

--

*Shelly Henderson*
*MA Special Ed, EdS*
*Exceptional Student District Specialist*
*Mid High*
*Zone 3*
*505-855-9944 office*
*505-252-9413 cell*
*"Believe in yourself, and the rest will fall into place. Have faith in your own abilities, work hard, and there is nothing you cannot accomplish." Brad Henry*

Exhibit 11

---------- Forwarded message ---------
From: **Todd Reed** <reed_t@aps.edu>
Date: Wed, Mar 24, 2021 at 8:15 PM
Subject: Re: Return to work
To: Shelly Henderson <henderson_sh@aps.edu>


Thanks for the information.  I do not have a problem meeting with my students, and look forward to doing so.  According to the Patients Bill of Rights I have the right to informed consent.  My doctor has explained that I do not need a mask, nor a vaccine.  I decline those medical interventions.  I will plan on showing up at my schools ready to work on March 29th.

thanks
Todd


On Wed, Mar 24, 2021 at 9:11 AM Shelly Henderson <henderson_sh@aps.edu> wrote:
Hi Todd,
I hope your Spring Break is peaceful. Please reach out to the ADA office again, because the expectation per HR, is that everyone returns to face to face on March 29th. The only time exception is if you are a REDW1 or 2, and are waiting the two weeks after their second vaccine if it is 2 doses, or two weeks after the 1 time. My understanding is if you have any different type of leave need, you have to go through ADA to create a plan.
Please keep me posted as to where you are in this process.
Thanks so much!
Shelly


On Tue, Mar 23, 2021 at 11:03 PM Todd Reed <reed_t@aps.edu> wrote:
Hello Shelly,
I hope you are having a restful break.  Thanks for your reaching out.

I did contact ADA. Nothing came of it.  I can make another effort to do so.  I have reconnected with the different teachers I work with to organize the times to work online.  I will follow up next week.

thanks
Todd


On Fri, Mar 19, 2021 at 12:18 PM Shelly Henderson <henderson_sh@aps.edu> wrote:
Hi Todd,
I thought I'd check in to see what your plan was regarding  going back face to face. I know you shared at one point you could not wear a mask, and I suggested you contact ADA for possible accommodations. I know you continued to work remotely, so it wasn't really an issue. Now we are coming back face to face, and I wanted to see if you were going to need ADA support. Along those lines, have you been lucky enough to get your vaccine? or even your second?
Just let me know what is happening so I know how to support you.
Thanks so much!
Shelly


--

*Shelly Henderson*
*MA Special Ed, EdS*
*Exceptional Student District Specialist*
*Mid High*
*Zone 3*
*505-855-9911 office*
*505-252-9413 cell*
*"Believe in yourself, and the rest will fall into place. Have faith in your own abilities, work hard, and there is nothing you cannot accomplish." Brad Henry*

Exhibit 12

From: **Todd Reed** <reed_t@aps.edu>
Date: Mon, Mar 29, 2021 at 4:29 PM
Subject: Medical (mask) Device
To: Socorro Rodriguez <rodriguez_so@aps.edu>, Bernadette Lucero
<turner_b@aps.edu>, Shelly Henderson <henderson_sh@aps.edu>,
Elizabeth Hudson <hudson_ej@aps.edu>, Todd Reed
<reed_t@aps.edu>


Hello Socorro,
I was informed to contact you corning the rest of the year and putting
a medical device on my face.  I have had bad experiences in my
efforts to wear a mask or shield, and have learned the detrimental
effects of putting such a device over my airways.  I have also learned
that this also is disrespectful in my faith.
It is to my understanding that it is not possible to accommodate my
health or faith. It was suggested that I take family health leave.  I was
informed by Elizabeth and Bernadette to set up a meeting ASAP and
given a time limit to do so by today at 5pm.  I will review over the
family health leave tonight and prepare to make the appropriate
plans.


Sincerely,
Todd Reed

Exhibit 13

---------- Forwarded message ---------
From: **Nancy Hoover** <hoover_n@aps.edu>
Date: Mon, Mar 29, 2021 at 11:02 AM
Subject: Masks, double masking and visors and Lunch time
To: lbj-staffDG <lbj-staffdg@aps.edu>

Hi, I just wanted to provide a few reminders about masks and COVID 19.
As staff members, some of you may be worried about exposure and others
may experience less worry.  Everyone is different so I wanted to give some guidance.

We must wear masks when at the school.  When wearing a mask it is important to do the following.
1.  Wash your hands or use hand sanitizer prior to putting on the mask.
 2.  When you put on the mask, touch only the strings or ties.  Never touch the inside of your mask.
  3.  You can then pinch the mask at the nose or make other adjustments by touching the outside of the mask.
   4.  When you remove the mask, place a paper towel or napkin on the
surface, and place your mask outside surface down.  When you remove
your mask again touch only the ties.
   5.  Wash your hands or use hand sanitizer.

Double masking is another option that gives your more protection than
wearing a single mask.

Follow the procedure above and place a disposable mask on first

(this
should be discarded at the end of each work day!).  Then cover the disposable mask with a cloth mask.  It is important to wash your cloth masks daily as well and avoid touching the inside of the mask touching
only the strings when you remove or apply.

If you use a visor, it must be disinfected daily.  Wipe down with a disinfectant wipe or rubbing alcohol or Zep Spirit II disinfectant spray , wait one minute, rinse with water  and air dry your shield.

At lunch, you will not be wearing a mask so it is important to socially distance to the best of your ability.

The students will be watching and following our lead so that it is important to do our best to follow the guidelines.

Nancy Hoover RN BSN NCSN
LBJ Middle School
6811 Taylor Ranch RD NW
Albuquerque, NM 87120
505-898-1492 x40542

Exhibit 14

From: **Kelly Marvin** <kelly.marvin@aps.edu>
Date: Mon, Mar 29, 2021 at 10:25 AM
Subject: Email 1 of 2 Physician Packet
To: Todd Reed <reed_t@aps.edu>, Socorro Rodriguez
<rodriguez_so@aps.edu>

Hi Todd,


Attached for your review please find the Medical Provider part of the
ADA Packet which includes the cover letter, the Medical Physician Form
and your Job Description requiring your Medical Provider to Rate.  I will
send you another email with the employee part of the packet needing to
be filled out by you and also submitted directly to my office via email or
via fax.

Due to the COVID-19 shutdowns, my office is allowing for medical
providers to email paperwork directly to my email address.  Should this
cause an inconvenience, they are also welcome to fax the paperwork to
the number listed on the cover letter.

Please let me know if you have any questions.
Thank You
Kelly Marvin
ADA Specialist
Risk Management
505-830-8463 (office phone)
505-884-4502 (office Fax)

Exhibit 15

On Tue, Mar 30, 2021 at 6:00 PM Shelly Henderson
<henderson_sh@aps.edu> wrote:
Good Evening Todd,
I know you were waiting for information on next steps regarding
return to work. The ADA office has stated that they did attempt to
work with you, so Bernadette spoke to HR, and mask wearing is a
"health mandate and a condition of employment." This means you
have the option of wearing a mask or working with HR to set up
FMLA. I know you were working on this, so I wanted to just follow up.
Please let me know what you will be doing.
Thank you,
Shelly

--

*Shelly Henderson*
*MA Special Ed, EdS*
*Exceptional Student District Specialist*
*Mid High*
*Zone 3*
*505-855-9944 office*
*505-252-9413 cell*
*"Believe in yourself, and the rest will fall into place. Have faith
in your own abilities, work hard, and there is nothing you
cannot accomplish." Brad Henry*

Exhibit 16

On Tue, Mar 30, 2021 at 8:10 PM Todd Reed <reed_t@aps.edu>
wrote:
Hello Shelly,
Thank you for the follow up and concern.
I have contacted Human Resources and left a message by phone and
by e.mail. I copied you the e.mail, and will make efforts to call again
tomorrow.  I downloaded several forms last night, but am concerned
if they are the appropriate forms.
I have a question.  I did not see requirements of mask wearing in my
contract.  Can you explain where" wearing a mask is a condition of
employment"?
I have done a follow up with the students, teachers and EA's to make
sure that the students are receiving their services.  I am hoping that
we will be able to figure something out so I can provide for the
students.
Again, thanks for your concern and follow up.

sincerely,
Todd Reed

Exhibit 17

On Wed, Mar 31, 2021 at 10:23 AM Shelly Henderson
<henderson_sh@aps.edu> wrote:
Hi Todd,
So I reached out to HR for information regarding mask wearing.
Please see below:

A.   4. Employees reporting to work at a school site will be
provided appropriate Personal Protective Equipment (PPE) by
the District as defined in section E of this agreement.

E. Personal Protective Equipment (PPE)

1. All bargaining unit members shall receive appropriate
PPE, per the CDC guidelines and OSHA requirements which
may include:
a. Appropriate protective gloves, N95 respirators or
CDC equivalent, and gowns for nurses,                isolation
room staff, pre-k teachers, certain special education
teachers and employees whose                 risk of
exposure is increased.

b. Adequate and sufficient supply of masks and, if needed,
face shields to ensure appropriate       prevention of
exposure.

c. Soap, sanitizer, disinfectant and paper towels.

2. If upon arrival at the work site an employee discovers that required

PPE has not been provided by the district, the employee shall immediately notify their supervisor. If the required PPE has not been made available to the employee, after notifying their supervisor, the employee has the right to work remotely until it has been provided.

      a. The employee shall notify their immediate supervisor before beginning any remote *work*.

      b. School administration shall affirm and notify the employee when all required PPE has been      provided.

      c. The employee will return to campus on their next scheduled workday and confirm all PPE has      been provided before beginning work.

      d. School administration will arrange supervision of students in classrooms until such time.

I will also forward the email that Dr. Blakey sent out regarding return to work. Please let me know how I can further support you.
Thank you,
Shelly

# Exhibit 18

On Thu, Apr 1, 2021 at 9:42 PM Todd Reed <reed_t@aps.edu> wrote:
Hello Shelly,
I wanted to inform you of my progress with HR.  I spoke with
Veronica and she has sent me the appropriate forms.  I have
contacted physicians to fill out the forms accordingly and submit.  I
do not know if the forms will be seen in time to submit extended
leave.  Veronica assured me that they will be able to complete the
process.  I will be submitting for sick leave and personal leave this
coming week to make sure all is covered.
Elizabeth has reached out and asked for all the information
concerning my students and contact with teachers etc.  I am working
on that at this time to complete appropriately.

I appreciate you getting back to me concerning my questions.  I do
have several other questions.  I did re read my contract, and it
doesn't state anything about wearing masks.  Dr. Blakey brought up
OSHA guidelines.  I have talked to an OSHA operative who explained
that the mask mandates opposes all that OSHA stands for.  The
OSHA supervisor brought up 29CFR 1920.134 which specifically
states that masks create hypoxia limiting oxygen content to 19.5%
resulting in organ failure and brain damage.  This was studied and
developed by an OSHA director in 2007.  More over, it is listed that
there must be a physician present to monitor the environment, and
even then the employees have to give informed consent.  Dr. Merrit
explains that masks do not limit viruses from be expelled because the
micron size of the rhino vurs  is too small (.125).  She gave the
analogy of a golf ball being thrown through a tennis net.  The
contents of the mask include glyphosate, teflon and pesticides.  One
of the biggest red flags is when I found out that mask makers,
vaccine producers, as well as APS have no liability or responsibility if
there are any adverse side effects.
The Nuremberg code: Article 6: Section 3: Codified under 21 CFR
50.21: In no case should a collective agreement or the consent of
community leader or any other authority, substitute for an individuals

informed consent.  Leaders should be aware that mandating masks on the citizens of a nation and preventing their access to food, healthcare, transport or education if they don't comply is a war crime.  Mask or any other medical intervention must remain voluntary.  I assure you I have researched this content extensively. I will not bore you with more information, but am surprised that Dr. Blakey has ignored the most important aspect of a patients right to to informed consent.  These are the patients bill of rights that correlate with Nuremberg code and is why the physicians in Nazi Germany were hung.

I not only have a great concern for my health, but the health of our students, especially the special needs students in which they use body language and reading facial gestures  to communicate. Again thank you for your understanding and concern in this matter.

sincerely,
Todd Reed

Exhibit 19

---------- Forwarded message ---------
From: **Kiley Rigg** <kiley.farner@aps.edu>
Date: Fri, Apr 2, 2021 at 10:40 AM
Subject: Re: APE (Sierra Vista)
To: Todd Reed <reed_t@aps.edu>
Cc: Elizabeth Hudson <hudson_ej@aps.edu>


No worries Todd. I hope all is well.

BOTH kiddos are remaining remote. ████████ has PE 8-840 on
Wednesday & ████████ has PE 8-840 on Friday.
Let me know if there is anything I can do to help.

Mrs. Kiley Rigg, M.A. Spec Ed
Special Education Teacher
Sierra Vista Elementary School
kiley.farner@aps.edu

CONFIDENTIALITY NOTICE: This email and attached documents
may contain confidential information. All information is intended only for
the use of the named recipient. If you are not the named recipient, you are not
authorized to read, disclose, copy, distribute or take any action in reliance on
the information and any action other than immediate delivery to the named
recipient is strictly prohibited. If you have received this email in error, do not
read the information and please immediately notify sender by telephone
to arrange for a return of the original documents. If you are the
named recipient you are not authorized to reveal any of this information to
any other unauthorized person. If you did not receive all pages listed or
if pages are not legible, please immediately notify sender by phone.





Exhibit 20

**From:** MATT DENISE
**Sent:** Friday, April 2, 2021 10:17 AM
**To:** Veronica.Johnson2@aps.edu <Veronica.Johnson2@aps.edu>
**Subject:** Todd Reed

Veronica
i am forwarding medical leave paperwork for Todd Reed.
If you need anything else relating to this please contact me.

Matt MD

# Exhibit 21

# Affidavit of Todd Reed

State of New Mexico

County of Bernalillo

Todd Reed, being duly sworn deposes and states as follows under penalty of perjury:

1. My name is Todd Reed, I am presently 57 yers old, and my current address of residence is 9420 Las Calabazillas Rd. NE. Albuquerque, New Mexico 87111.

2. The purpose of this Affidavit is to affirm the validity of the events that have been written is true and correct to the best of my knowledge.

3. That the SoF listed and documentation by e.mail and phone calls transcribed through writ is true to the best of my knowledge.

I hereby swear or affirm that the information above is true accurate and complete to the best of my knowledge, and that no relevant information has been omitted.

Dated:

_12/28/2022_

Signature of Individual:

_Todd Reed_

Subscribed and sworn to before me

this _28_ day of _December_, 20_22_

_____

(NOTARY PUBLIC)
My commission Expires _5-22-23_

LINDSAY MORA
Notary Public - State of New Mexico
Commission # 1126135
My Comm. Expires May 22, 2023

Exhibit 22

From: **Shelly Henderson** <henderson_sh@aps.edu>
Date: Sat, Apr 3, 2021 at 3:33 PM
Subject: Re: HR information
To: Todd Reed <reed_t@aps.edu>


Hello Todd,
Thank you for all the information. Regarding sick and all other types
of leave, I am just notified of what type of leave, and when you are
taking it. I do not put anything in. Sheri Call is our department
secretary that handles all of this. Please contact her to let her know
what leave you are taking and when. Just CC me on the email when
you put it in. Please let me know if you have any questions.
Thank you for your cooperation.
Shelly


On Thu, Apr 1, 2021 at 10:13 PM Todd Reed <reed_t@aps.edu>
wrote:
Hi Shelly,
I'm sure you have already figured out that I did not know all sick leave
goes through you.  As a classroom teacher, I would just call in.  As I
mentioned in the previous e.mail, I was going to use sick and
personal days to cover the days needed for extended sick leave this
coming week, until I can get my medical form signed and approved.  I
don't know how long it will take for that to happen, but would greatly
appreciate it if you could submit sick days, or personal days, however
you see fit until the extended sick leave goes into effect.
I apologize for any inconvenience.

Todd

Exhibit 23

## Form A--Application for Extended Leave

Extended leaves are those expected to last more than 3 consecutive working days. You must notify the APS Human Resources Extended Leaves Office at least thirty (30) days prior to the commencement of your extended leave of absence. Union contract and applicable Federal and State law govern these leaves. Your eligibility for leave will be determined after receiving this form and all relevant supporting documentation. Your leave **will not** be **accepted** until complete. You will be notified of your leave status by mail.

### Leave Information – Print Legibly

Name: _Todd Reed_
Address: _9420 Las Calabazillas NE_
City, Zip _Alb NM 87111_
Home #: _505 604 8980_     Cell #: ____
Loc. #: _515_     Location Name: _LBJ_

Employee #: _126542_
Job Title: _APE Teacher_
Site Supervisor: _Shelly Henderson_
Site Payroll Person: _Shelly Henderson_

| Do you qualify for Sick Leave Bank? ☐Yes ☐No | Is this a continuation from Sick Leave Bank? ☐Yes ☐No |

## If you need to apply for Sick Leave Bank...STOP!
### If you intend to apply for Sick Leave Bank benefits, complete the SLB Application and SLB Physician's Statement

**Period of Leave Requested**
Requested Leave Start Date: _April 5, 21_     Expected Return to Work Date _May 25, 21_

**Type of Leave You Are Requesting**

| | |
|---|---|
| ☐Advance Study Leave (Unpaid) | Form A and letter of acceptance, class schedule, and grades for prior semester, (if applicable) |
| ☐Assault Leave | Form A and police report, and health care provider certification, employees also complete First Report of Injury and contact Risk Management at 830-8466 |
| ☐Domestic Violence Leave | Form A and legal documentation |
| ☐Illness in the Immediate Family | Form A and Family-Certification of Health Care Provider |
| ☐Injury or Illness of Military Member | Form A and WH385 |
| ☐Intermittent Leave | Form A and Employee or Family-Certification of Health Care Provider |
| ☒Medical Leave | Form A and Employee-Certification of Health Care Provider |
| ☐Military Service Leave | Form A and military orders or commander's letter |
| ☐Parental Leave (Birth of a child) | Form A and Employee-Certification of Health Care Provider |
| ☐Parental Leave (Non-Birth Only) | Form A and Family-Certification of Health Care Provider, child's birth certificate, or legal documentation of adoption or foster placement (documentation depends on situation) |
| ☐Part-time Leave | Form A and Statement Page (A Schedule Only--no supervisor signature required) |
| ☐Personal Leave (Unpaid) | Form A and Statement Page signed by supervisor (A, B, G/H Schedule employees do not need supervisor signature) |
| ☐Political | Form A and confirmation of appointment |
| ☐Qualifying Exigency | Form A and Form WH 384 |
| ☐Union Leave | Form A and name of Union you will represent ____ |

**Medical Release will be required to reinstate from medical leave.**

Refer to the Negotiated Agreement and/or Leaves Specialist regarding the use of available paid leave. **For Medical Leave** (for your own illness or injury), the district will exhaust all your available leave balances. Your available leave will be used in this order: sick leave, personal days, and annual leave. In qualifying circumstances, employees requesting extended leave will be able to use their available balances that have accrued up until the start of the leave. Absences balances will cease to accrue once an employee is in an unpaid status.

For **Illness in the Immediate Family Leave**, the district will exhaust your Sick leave accrual, personal leave, and annual (if available). After these accruals are exhausted, the remainder of your leave will be unpaid.

Sign this form. Attach appropriate documentation. Return this packet to Extended Leaves Office in person or by US Mail. PO Box 25704, Albuquerque, NM 87125-0704. If you have questions, please contact the Leave Specialist at **889-4824 (A-H) or 889-4808 (I-P) or 889-4865 (Q-Z)**.

Signature: _Todd Reed_     Date: _4/1/21_

APS/HR/EXTENDED LEAVE OFC. FAX NUMBER: **(505) 884-0536**

 **ALBUQUERQUE PUBLIC SCHOOLS**

**EMPLOYEE**

Certification of Health Care Provider for
Employee's Serious Health Condition
Page 1

Employee/Patient Name: *Todd Reed*

Employee/Patient Address: *9420 Los Calabazillas NE*

Employee ID Number: *126545*        Employee's Job Title: *APE Teacher*

_Instructions for the Health Care Provider._ Your patient has requested a leave of absence. Limit your responses to the condition for which the employee is seeking leave. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine coverage.

1) Dates you treated the employee for this condition: *Several times over past Year, Most recently 4/1/21*

2) What, if any, job function is the employee unable to perform? *Mr. Reed is unable to wear a mask as mandated due to severe stress reaction including hives, anxiety with claustrophobia and also has a syncopal episode with the mask on.*

3) Is the medical condition a pregnancy? No ☑   Yes ☐ Expected delivery date_____

4) Will the employee be incapacitated for a single continuous period of time due to his/her medical condition including any time for treatment and recovery? No ☐   Yes ☑
If so, estimate beginning *4/2/21* and ending *? based on mask demand.* dates for incapacity period.

5) Will the employee need to attend follow-up treatment appointments, work part-time, or be on a reduced work schedule because of the medical condition?   No ☑   Yes ☐

If so, include dates of appointments and time required for each appointment including recovery period.

_____

_____

_____

Employee                    Continued on Next Page              Revised May 2019



**ALBUQUERQUE PUBLIC SCHOOLS**

**EMPLOYEE**

Certification of Health Care Provider for
Employee's Serious Health Condition
Page 2

- Treatment schedule: _____ N/A _____ times per week _____ times per month

  _____ Hours needed for each appointment

  Start Date _____ End Date _____

- Part-time work schedule: _N/A_ hours per day _____ days per week

  Start Date _____ End Date _____

- Reduced work schedule: _N/A_ Number of hours employee can work per day

  Start Date _____ End Date _____

6) Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? No ☑ Yes ☐ If yes,

   *↳ when mask mandate lifted, will*

   Frequency _____ Times per week _____ Times per month *ongoing (when*

   Duration _____ Hours per episode _____ Days per episode

   Start Date _____ End Date _____

7) Describe other relevant medical facts, if any, related to this condition (symptoms, diagnosis, or regimen of continuing treatment, specialized equipment): *Due to severe stress reaction as detailed earlier, Mr. Reed is unable to function as a teacher while wearing a mask*

Provider's name: *Matt Poole M.D.*

Provider's business address: *24 Sagebrush Circle Corrales NM 8704*

Type of practice / Medical specialty: *Emergency Medicine*

Telephone: *(505) 897 8143* Fax: (_____)

_____ *Matt Poole M.D.*                    *4/2/21*
Signature of Health Care Provider                                     Date

Employee                              Page 2                    Revised May 2019

# Exhibit 24

From
<u>Stored with zero-access encryption</u>
toddreed16@protonmail.com
Sent
Feb 3, 2022
To
todd.torgerson@aps.edu

Hello **Todd**,

I have been unable to get into my aps e.mail account.

I have several calls into the help desk.

Please send any information to this e.mail address until my aps e.mail is restored.

I have been waiting for my personnel file.

thanks

**Todd** Reed

From
<u>Stored with zero-access encryption</u>
toddreed16@protonmail.com

Sent
Feb 8, 2022
To
todd.torgerson@aps.edu

Hello **Todd**,

The Help Desk was unable to re connect me to my aps e.mail.

Please send the information to this e.mail.

Thank you

**Todd** Reed

# Exhibit 25

## Electronic Delivery Confirmation™

**USPS CERTIFIED MAIL™**

Todd Reed
9420 LAS CALABAZILLAS RD NE
ALBUQUERQUE NM 87111-2540

**USPS CERTIFIED MAIL**



**9407 1118 9876 5840 1543 38**

**$4.28   US POSTAGE**
FIRST-CLASS
Mar 03 2022
Mailed from ZIP 87111
1 oz First-Class Mail Letter

11923275



062S0012913542

Albuquerque Public Schools
Todd Torgerson, Human Resources/Legal Support
6400 UPTOWN BLVD NE
ALBUQUERQUE NM 87110-4202

| Reference | |
|---|---|
| USPS # | 9407111898765840154338 |
| USPS Mail Class | Certified with Electronic Delivery Confirmation |
| USPS Status | Your item is out for delivery on March 10, 2022 at 7:35 am in ALBUQUERQUE, NM 87111. |
| USPS History | Arrived at Post Office, 03/10/2022, 7:24 am, ALBUQUERQUE, NM 87111. |
| | Departed USPS Facility, March 9, 2022, 6:38 pm, ALBUQUERQUE, NM 87101 |
| | Forward Expired, March 5, 2022, 9:23 am, ALBUQUERQUE, NM 87110 |
| | Out for Delivery, 03/05/2022, 6:10 am, ALBUQUERQUE, NM 87110 |
| | Arrived at Post Office, 03/05/2022, 5:41 am, ALBUQUERQUE, NM 87110 |
| | In Transit to Next Facility, 03/04/2022 |
| | Arrived at USPS Facility, March 3, 2022, 8:21 pm, ALBUQUERQUE, NM 87101 |
| | Accepted at USPS Origin Facility, March 3, 2022, 7:06 pm, ALBUQUERQUE, NM 87111 |
| | Shipping Label Created, USPS Awaiting Item, March 3, 2022, 5:21 am, ALBUQUERQUE, NM 87111 |

**Electronic Delivery Confirmation Report © 2022 Certified Mail Envelopes, Inc. All rights reserved.**
The data collected for this mail label was authored and reported by The United States Postal Service USPS. Copies are available from your Post Office or online at www.USPS.com.  USPS Certified Mail™ is a registered trademark of The United States Postal Service. All rights reserved.

Exhibit 26

toddreed16@protonmail.com


Mar 14, 2022
Monday, March 14th, 2022 at 8:12 PM
To
todd.torgerson@aps.edu




Todd  Reed
Toddreed16@protonmail.com

---

Todd Torgerson, Human Resources and Legal Support Services
Albuquerque Public Schools (APS)
6400 Uptown Blvd NE
Albuquerque NM 87110
email: Todd.torgerson@aps.edu

## CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

March 2, 2022


RE:     **Notice of Employment Discrimination and Harassment Based Upon Disability**

Hello Todd Torgerson,

I am requesting that you include this Notice in the appropriate file for complaints of discrimination which the EEOC can access. I want this and subsequent communications I send you to be kept in this file. I am documenting acts of discrimination and harassment of which I have been subjected to on the job.

I am documenting that my employer is regarding me as having a disability (an impaired immune system and an impaired respiratory system) **without any diagnosis or individualized assessment** and has also made a record of such disability by **mis-classifying me** as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities.1

My employer is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent.  It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

Regarding the mitigation measures such as vaccines and submitting to medical examinations, I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). Moreover, I am not required to prove any "exemption" but the employer alone has the burden of proving that I am a direct threat. My employer is responding to me as if I have an actual or potential contagious disease. I demand to review the records the employer has relied upon to determine that I am a direct threat. If there is some legal authority that overrides my rights under the ADA, please provide me with a legal citation.

My employer is also threatening adverse employment actions if I do not submit to mitigation measures.

Because my employer is regarding me as disabled, I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability. I also want to speak confidentially to the APS designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances. **Please identify this employee to me and give me their contact information.**

I am notifying my employer at this time that I am claiming my rights under the ADA, and I do not need to file a "medical" or "religious" exemption--- I am already "exempt" from the new policy by claiming informed consent and by claiming my rights under the ADA. I am already exempt because my employer is not relying on any individualized assessment or diagnosis of any condition of impairment. I do not have an impairment rather I am being regarded as impaired. The fact that my employer has not acknowledged informed consent or ADA-based reasons for not using "mitigation measures" on the forms offering "exemptions" is interference with my rights under the ADA.

From the EEOC website, number 19, "Interference":

> "Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"2

All my employer's forms which only offer medical or religious exemption as the only "opt-out" choices interfere with my ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

## Questions for the APS Legal Department or Risk Management Department to respond to:

I have several questions that I would like answered by my employer and I request Human Resources to incorporate getting them answered as part of its discrimination investigation.

1. Why does APS regard me as having a disability of an impaired immune system and an impaired respiratory system and what records have you made of this?

2. An actual diagnosis must precede any prescription or treatment. What medical records and complaint made by a physician to a health officer, and "orders of isolation and quarantine" does APS rely upon for regarding me as having an impaired immune system and an impaired respiratory system? Please include all evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under Title I of the Americans with Disabilities Act.3

3. When did APS conspicuously disclose that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job?

4. Please identify the statute and regulation imposing APS' legal duty of care to protect

me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

    5.   Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

    6.   Please identify APS' insurable risk with a copy of the insurance binder showing that APS is insured for protecting employees from a contagious disease and for any adverse health consequences they may suffer as a result of APS' mitigation measures.

    7.   Regarding the mitigation measures, **a)**  why has APS refused to include notice that this injection is under an <u>emergency use authorization</u>, and disclosed the <u>risks and benefits</u> of the product, and also advised me of my right to either <u>accept or refuse</u> the product,4 and **b)** which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

    8.   How are these requests for my medical information and my submitting to medical examinations and interventions necessary for the performance of my employment duties?

    9.   How can APS assume my immune system and respiratory system is impaired; respond me to me as if I have a contagious disease, then impose restrictions and medical interventions without my informed consent, physician's oversight or judicial approval; yet I am somehow required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy?  Please explain this to me.

We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

**Be advised that if my employment is conditioned upon submitting to your mitigation measures of vaccination and/or stricter PPE, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,

**TODD REED**

**Please be advised that this communication and all related communications are confidential and must not be disclosed as per the Americans with Disabilities Act explained below.**

## <u>Post Script Memorandum of Law</u>

Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as [EMPL], to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity.   42 U.S.C. §§ 12112(d)(4)(A)–(B); 29 C.F.R. § 1630.14(c).   See also <u>Darby v. Childvine, Inc.</u> 964 F.3d 440 (2020).

Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record.   42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

Confidential medical information may be disclosed in three instances: (1) to inform supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation.  42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).    None of these exceptions apply with regard to my employment with APS.

I understand that some employers are relying upon the Department of Justice's commentary regarding whether the FDA language protects employers who require employees to undertake injections as a condition of employment.  The complete text from the DOJ opinion WAS NOT included in the White House press release.  The full text makes clear that these policies may not withstand scrutiny based upon the ADA and various laws.

The White House and Department of Justice, via Jen Psaki, made a false and misleading statement in the White House press briefing dated July 6th, 2021.5

This was the statement that was released:

> **"Section 564(e)(1)(A)(ii)(III) of the Food, Drug, and Cosmetic Act concerns only the provision of information to potential vaccine recipients and does not prohibit public or private entities from imposing vaccination requirements for a vaccine that is subject to an emergency use authorization."**

The complete opinion from the Department of Justice stated this:

> "Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization."6

> **"We do not address whether other federal, state, or local laws or regulations, such as the Americans with Disabilities Act ("ADA"), might restrict the ability of public or private entities to adopt particular vaccination policies. See, e.g., Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (updated June 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (discussing the ADA)."7**

Sincerely,

Todd Reed

Exhibit 27

Todd  Reed
Toddreed16@protonmail.com

Todd Torgerson, Human Resources and Legal Support Services
Albuquerque Public Schools (APS)
6400 Uptown Blvd NE
Albuquerque NM 87110
email: Todd.torgerson@aps.edu

## CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

March 2, 2022

RE:   **Notice of Employment Discrimination and Harassment Based Upon Disability**

Hello Todd Torgerson,

I am requesting that you include this Notice in the appropriate file for complaints of discrimination which the EEOC can access. I want this and subsequent communications I send you to be kept in this file. I am documenting acts of discrimination and harassment of which I have been subjected to on the job.

I am documenting that my employer is <u>regarding me as having a disability</u> (an impaired immune system and an impaired respiratory system) **without any diagnosis or individualized assessment** and has also <u>made a record of such disability</u> by **mis-classifying me** as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities.1

My employer is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent.  It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

Regarding the mitigation measures such as vaccines and submitting to medical examinations, <u>I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d)</u>.  Moreover, I am not required to prove any "exemption" but the employer alone has the burden of proving that I am a direct threat. My employer is responding to me as if I have an actual or potential contagious disease. I demand to review the records the employer has relied upon to determine that I am a direct threat.  If there is some legal authority that overrides my rights under the ADA, please provide me with a legal citation.

My employer is also threatening adverse employment actions if I do not submit to mitigation measures.

Because my employer is regarding me as disabled, I am invoking my rights under the <u>Americans with Disabilities Act</u> as a qualified individual with a disability. I also want to speak confidentially to the APS designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances. **Please identify this employee to me and**

give me their contact information.

I am notifying my employer at this time that I am claiming my rights under the ADA, and I do not need to file a "medical" or "religious" exemption--- I am already "exempt" from the new policy by claiming informed consent and by claiming my rights under the ADA. I am already exempt because my employer is not relying on any individualized assessment or diagnosis of any condition of impairment. I do not have an impairment rather I am being regarded as impaired. The fact that my employer has not acknowledged informed consent or ADA-based reasons for not using "mitigation measures" on the forms offering "exemptions" is interference with my rights under the ADA.

From the EEOC website, number 19, "Interference":

> "Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"2

All my employer's forms which only offer medical or religious exemption as the only "opt-out" choices interfere with my ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

## Questions for the APS Legal Department or Risk Management Department to respond to:

I have several questions that I would like answered by my employer and I request Human Resources to incorporate getting them answered as part of its discrimination investigation.

1. Why does APS regard me as having a disability of an impaired immune system and an impaired respiratory system and what records have you made of this?

2. An actual diagnosis must precede any prescription or treatment. What medical records and complaint made by a physician to a health officer, and "orders of isolation and quarantine" does APS rely upon for regarding me as having an impaired immune system and an impaired respiratory system? Please include all evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under Title I of the Americans with Disabilities Act.3

3. When did APS conspicuously disclose that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job?

4. Please identify the statute and regulation imposing APS' legal duty of care to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

5. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

6. Please identify APS' insurable risk with a copy of the insurance binder showing that APS is insured for protecting employees from a contagious disease and for any adverse health consequences they may suffer as a result of APS' mitigation measures.

7. Regarding the mitigation measures, **a)** why has APS refused to include notice that this injection is under an emergency use authorization, and disclosed the risks and benefits of the product, and also advised me of my right to either accept or refuse the product,4 and **b)** which of these mitigation measures has the proven efficacy to prevent transmission or infection

of the contagious disease for which you regard me as having?

8.   How are these requests for my medical information and my submitting to medical examinations and interventions necessary for the performance of my employment duties?

9.   How can APS assume my immune system and respiratory system is impaired; respond me to me as if I have a contagious disease, then impose restrictions and medical interventions without my informed consent, physician's oversight or judicial approval; yet I am somehow required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy?  Please explain this to me.

We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

**Be advised that if my employment is conditioned upon submitting to your mitigation measures of vaccination and/or stricter PPE, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,


TODD REED

**Please be advised that this communication and all related communications are confidential and must not be disclosed as per the Americans with Disabilities Act explained below.**

## Post Script Memorandum of Law

Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as [EMPL], to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity.   42 U.S.C. §§ 12112(d)(4)(A)–(B); 29 C.F.R. § 1630.14(c).   See also Darby v. Childvine, Inc. 964 F.3d 440 (2020).

Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record.   42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

Confidential medical information may be disclosed in three instances: (1) to inform supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation. 42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).   None of these exceptions apply with regard to my employment with APS.


I understand that some employers are relying upon the Department of Justice's commentary regarding whether the FDA language protects employers who require employees to undertake injections as a condition of employment.  The complete text from the DOJ opinion WAS NOT

included in the White House press release.  The full text makes clear that these policies may not withstand scrutiny based upon the ADA and various laws.

The White House and Department of Justice, via Jen Psaki, made a false and misleading statement in the White House press briefing dated July 6th, 2021.5

This was the statement that was released:

> **"Section 564(e)(1)(A)(ii)(III) of the Food, Drug, and Cosmetic Act concerns only the provision of information to potential vaccine recipients and does not prohibit public or private entities from imposing vaccination requirements for a vaccine that is subject to an emergency use authorization."**

The complete opinion from the Department of Justice stated this:

> "Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization."6

> **"We do not address whether other federal, state, or local laws or regulations, such as the Americans with Disabilities Act ("ADA"), might restrict the ability of public or private entities to adopt particular vaccination policies. See, e.g., Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (updated June 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (discussing the ADA)."7**

**Sincerely,**

**Todd Reed**

Exhibit 28

toddreed16@protonmail.com

### Has 1 attachment

Mar 16, 2022
Wednesday, March 16th, 2022 at 11:26 PM
To
todd.torgerson@aps.edu

Todd Reed
9420 Las Calabazillas  Rd. NE
Albuquerque NM 87111
<u>505-604-8980</u>
<u>toddreed16@protonmail.coml</u>

---

—
Enedina Cruz, ADR Coordinator          CRTIU Supervisor
New Mexico District Office EEOC          New Mexico  District Office EEOC
500 Gold Avenue SW, Suite 6401          500 Gold Avenue SW, Suite 6401
PO Box 128                                                PO Box 128
Albuquerque, NM 87103                        Albuquerque NM 87103
Enedina.Cruz@eeoc.gov
Todd Torgerson, Human Resources       Legal Counsel
APS                                                            APS
6400 Uptown Blvd. NE                            6400 Uptown Blvd. NE
Albuquerque NM 87110                           Albuquerque NM 87110

3/10/22
https://www.eeoc.gov/mediation-contact-list

### For New Mexico District Office EEOC

### Charge of Discrimination and Request for Mediation

Re: APS
6400 Uptown Blvd. NE
Albuquerque NM 87110

### STATEMENT IN SUPPORT OF COMPLAINT

I am making this complaint against my employer for its discrimination against me based upon disability.   The EEOC has the authority and legal duty investigate this complaint.

My employer regards me as having a disability.
My employer has made a record of such disability.

My employer has failed to conduct any individualized assessment to determine if I am a direct threat to anyone.   My employer has failed to engage in any interactive process with me concerning disability rights or resolutions.

I am being treated as if I have an impairment and therefore qualify for the protections of the ADA.

Witness List:

- Sunset Mesa (School)

- **Principal: Jaclyn Bogue**

- **Phone:** (505) 898-0272

- Fax: (505) 898-1796

- Physical Address**:**

  10220 Paseo del Norte NW

- Albuquerque, NM 87114

- Sunset View: (School)

- **Principal: Linda Townsend-Johnson, Ph.D.**

- Phone**:** (505) 792-3254

- Fax**:** (505) 898-9233

- Physical Address:

  6121 Paradise Blvd. NW

- <u>Albuquerque, NM 87114</u>

  LBJ: (School)

- **Principal: Mike Bachicha**

- Phone: **(505) 898-1492**

- Fax**: (505) 898-7150**

- Physical Address:

  6811 Taylor Ranch Dr. NW

- <u>Albuquerque, NM 87120</u>

  **Todd Torgerson (HR)**

  todd.torgerson@aps.edu

  <u>505-889-4853</u>

  **Kelly Marvin (Risk Management)**

  ADA Specialist

  kelly.marvin@aps.edu

  <u>505-830-8463</u>

  Shelly Henderson (Supervisor)

  henderson_sh@aps.edu

  <u>505-855-9944</u>

  **Elizabeth Hudson (liaison)**

  hudson_ej@aps.edu

505-855-9948_____

Board of Education:

Peggy Muller-Aragon
Phone: (505) 880-3729
Email: peggy.mulleraragon@aps.edu

David Peercy
Phone:(505) 880-3729
Email: peercy_d@aps.edu

**Superintendent:**

**Scott Elder**

Main Phone: (505) 880-3713
Fax: (505) 872-8855
Email: superintendent@aps.edu
6400 Uptown Blvd. NE, Suite 600 East
Albuquerque 87110

I have asked to speak confidentially with my employer's designated employee or representative that is responsible for resolving matters involving the Americans with Disabilities Act and grievances thereunder, but my employer refuses to provide me access to such a person.

Instead, my employer has offered various accommodation measures including but not limited to mask-wearing, staying six feet away from others, frequent hand-washing, collection, use and storage of my vital statistics, histological samples and biometric data and biometric identifiers without adequate or proper notice, adequate disclosures, adequate data retention security or my informed consent, working in isolation, video-graphic and audio-graphic communications in lieu of face to face communications, working behind clear shielding, and injections of certain types of suspensions which are being called "vaccinations" yet do not prevent infection or transmission of any contagious disease and in fact create more disabilities by altering the normal function of my immune system and other cellular functions.  My employer has not merely "offered" such accommodation measures, but threatened me with penalties including those described herein for refusing such accommodations in violation of 29 CFR Part 1630.9(d).

Albuquerque Public Schools (APS) regards me as disabled by classifying me as a *potential or actual source* of COVID-19. Their affirming action of regarding me as a

potential or actual source is that I have been given the coercive, threatening, and intimidating choice to vaccinate or be terminated.

APS regards me as disabled through its classification of me as *unvaccinated*, unmasked, or having a contagious disease and to be tested accordingly and the affirming action of regarding me as unvaccinated, unmasked, not tested that I will be terminated upon arrival on site on the basis of being unvaccinated, unmasked or not tested. These factors are based solely upon my employers perception of my physical condition.  APS can label this however it wishes to attempt to avoid this truth, but the classification of my vaccination status as "unvaccinated" has caused me to be fired. APS has used policies and procedures that are intimidating, threatening, coercive, and that interfere with ADA rights, and this is prohibited under the ADA.

**Interference:**  My employer, APS, has deceptively tried to persuade me that my only remedy to the illegal policy demands would be to ask for a medical or religious exemption from these discriminatory policies and practices, thereby creating a false record that is without legal merit. APS only presented a medical or religious exemption, and did not even mention that ADA accommodations are available, which is obfuscation of and interference with my exercise and enjoyment of the rights held under the ADA, particularly 42 USC 12203(b) and 29 CFR 1630.12(b).

"Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"

https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

All APS forms requesting injection status which only offer medical or religious exemption as "opt-out" choices interfere with ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination based upon disability, such as being terminated or segregated because of one's physical condition.

My employer asked me to describe my disability and discuss it with certain employees, even though such disability does not adversely affect my ability to perform the duties of my employment, and has done so without any offer or attempt to make such disclosures in confidence or privately.

I have requested information regarding the risks and benefits of my employers accommodation measures and in response, my employer has retaliated against me by humiliating me in front of others, by reprimanding me and has threatened or intimidated or coerced me with the threat of suspension of my pay, reduced hours or pay or the termination of my employment for refusing such accommodation measures instead of

providing me with the information I requested so that I could make an informed decision.

I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation as a result of my exercise of such rights, and my employer has prevented and interfered with this occurring.

I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.

APS has instead retaliated against me for exercising my rights under the Americans with Disabilities Act by threatening me with disciplinary measures and penalties for refusing such accommodation measures, including but not limited to suspension or reduction of pay,   limiting my access to the premises where I work, segregation, isolation, termination of employment, exclusion from programs or services that would permit me to improve my employment skills or become eligible for advancement, and denied me the possibility for promotion even when I was eligible or would become eligible.

Each day my employer permits and encourages other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of my employment duties.

I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not.  I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.

My employer has written and adopted policies that exacerbate my disabilities and create disabilities while also encouraging others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations and failures to comply with the law and violation my rights.


## REQUEST FOR INVESTiGATION AND MEDIATION

By filing this Charge, I am formally requesting a mediation hearing to resolve these issues.   I request that my Charge be entered manually and a hearing be

scheduled.  I request the CRTIU Supervisor to enter my Charge into the EEOC system personally as I do not find the online portal acceptable or accessible for entering my Charge.   I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

_____
Name


Enclosure Copies:

    1.) Notice of Employment Discrimination & Harassment Based on Disability

Exhibit 29

From
toddreed16@protonmail.com

Sent

Has 1 attachment

Mar 24, 2022
Thursday, March 24th, 2022 at 10:49 PM
To
superintendent@aps.edu
todd.torgerson@aps.edu
henderson_sh@aps.edu
peggy.mulleraragon@aps.edu

Thursday, March 24th, 2022 at 10:49 PM

Dear Superintendent and Board of Education,                    3/25/22

Due to the unlawful and mitigated circumstances forced upon me by the unlawful acts
related to the disease known as "Covid 19", I am being forced into early retirement as a
Teacher at Albuquerque Public Schools effective immediately, (March 23rd, 2022).

Albuquerque Public Schools has forced me to take extended sick leave, and has
discriminated against me forcing me into medical treatment and tests with unqualified
and non medical personnel for a factitious disease. I have been targeted by individuals
who believe that they are regarding me as having an illness, and made efforts to treat a
disease I never had, which clearly shows the symptoms of Munchausen Syndrome by
Proxy, which ironically nullifies their claim, but initiates an actual diagnosis of a mental
illness these individuals would be diagnosed and have their rights removed.   Due to
such tyrannical directives,  I have been forced to move on to an occupation which
respects the law and my inalienable rights.

Forcing children into medical experiments and coercing parents to force their children to
become guinea pigs is something that I cannot participate in any form.

Sincerely,

Todd Reed

Exhibit 30

Discrimination and Harassment: Employees Albuquerque Public Schools (APS) provides equal employment opportunities for all employees and prohibits any form of discrimination/harassment in all facets of employment including, but not limited to, recruitment, job advertisement, employment, compensation, promotion, transfer, demotion, layoff, termination/discharge, or selection for district-sponsored training programs. These prohibitions apply to all employees (and students, as covered in a separate directive) and to third parties not directly subject to district-sponsored control. Examples of third parties include audiences and competitors at inter-district athletic competitions, service contractors, school visitors, and employees of businesses or organizations participating in cooperative work or school programs with the district. Title VII of the Civil Right Act of 1964, Title IX of the Educational Amendments of 1972, the Age Discrimination in Employment Act, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New Mexico Human Rights Act and APS Board policies prohibit discrimination. Questions or concerns regarding any form of discrimination or harassment based on disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status, HIV status, pregnancy, or any other protected class as defined by law should be directed to the Office of Equal Opportunity Services

Definition and Examples of Harassment as Defined by Law Generally, harassment is considered to have occurred when conduct: 1. has the intent or effect of creating an intimidating, hostile or offensive educational environment, or 2. has the intent or effect of substantially or unreasonably interfering with an employee's workplace opportunities Harassment is offending behavior that creates a hostile environment. Both objective and subjective perspectives are considered in relation to a particular type of conduct, including the victim's age, race, gender, disability, and/or other protected class as defined by law. . Individuals or groups are in violation of district policy if they engage in the following types of behavior (not an all-inclusive list) toward an individual on school grounds, in the workplace, at school/work-sanctioned activities or in vehicles owned/dispatched by the district: 1. making demeaning or derogatory remarks or comments directly to an individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation,

national origin or ancestry, 8/10/22, 4:29 PM Discrimination and Harassment: Employees — Albuquerque Public Schools https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/g.-personnel/discrimination-and-harassment-employees 2/10 religion, age, veteran status or any other protected status as defined by law **2. displaying suggestive visual or written material of a sexual nature 3. defacing APS property or materials by writing demeaning or derogatory words, letters, names or the like directly or indirectly to an individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status or any other protected status as defined by law 4. staring or glaring or showing obscene gestures or suggestive gestures (such as touching your private parts in front of others) 5. repeatedly asking someone for a date when he/she is not interested 6. damaging, defacing, or destroying private property of any individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status or any other protected status as defined by law**

APS POLICY:
**Definition and Examples of Disability Harassment Discriminatory behavior toward an individual with a** *disability may be considered harassment when that disability-focused behavior is sufficiently severe, pervasive or persistent so as to interfere with or limit the ability of the individual to participate in or benefit from the district's programs or activities. Examples of possible disability harassment are: excluding an individual from activities because of appearance related to disability;* **severe, pervasive or persistent name-calling based on disability or** *perceived disability;* **and threats or actions such as tampering with an employee's equipment** or workspace and *physical intimidation.*

*Definition and Examples of Harassment Based on Religion Targeting an individual or individuals because of his/her/their religion or religious beliefs may be a form of harassment.* **Examples of possible harassment based on religion are: making derogatory jokes regarding a particular religion and verbal, physical or** *written intimidation of an individual because of his/her/their religion*

Exhibit 31


**ALBUQUERQUE
PUBLIC SCHOOLS**

# Section 504 of the Rehabilitation Act / Americans with Disabilities Act (ADA) Compliance: Employees

For purposes of this procedural directive, "supervisor" means the person having responsibility for daily supervision and/or for evaluating the job performance of an employee of the district.

For purposes of this procedural directive, "ADA coordinator" is the employee responsible for overseeing Americans with Disabilities Act (ADA) and New Mexico Human Rights Act (NMHRA) accommodations for APS employees.

## Employment Practices

Notice of the Board of Education's policy on non-discrimination in employment practices shall be posted through annual newspaper notices, posted on the Albuquerque Public Schools' website, posted throughout the district, and published in any district statement regarding the availability of employment positions.

Information regarding the district's policy on non-discrimination in employment practices shall be provided to potential employees in recruitment and interview settings.

In the planning of training sessions for employees, availability of training sessions (including physical access to the training site) shall not be limited so as to discriminate against employees with disabilities.

In determining hiring, transfer or promotion of employees, placement shall not be determined or influenced by any employee's disabling condition.  It is the prerogative of the employer, however, to determine office, classroom, or other area of work based on already accessible work areas.

Each job description shall be written to:

- Identify any environmental factors that may create a barrier for a person with a disability
- Ensure that all essential physical, mental and intellectual qualifications have been defined and justified
- Identify the types of abilities that would qualify a person to fulfill the essential functions of a job

Albuquerque Public Schools shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the district can demonstrate that the accommodation would impose undue hardship on the operation of its program and activity for employees that includes, but is not limited to:

- Modifications or adjustments to a job application process
- Employment policies that enable a qualified individual with a disability to be considered for the position
- The work environment
- Making facilities used by employees readily accessible to and usable by persons with disabilities
- Job restructuring including in a way in which the job is customarily performed and part-time or modified work schedules
- Acquisition or modification of equipment or devices and
- The provision of readers or interpreters and other similar actions

The district shall not use employment tests or other selection criteria that tend to screen out persons with disabilities unless those criteria are demonstrably job related.

# Reasonable Accommodation Requests/Procedures

An employee who believes he/she requires a reasonable accommodation to meet the essential functions of the job may request a reasonable accommodation.

The employee shall submit a written request for reasonable accommodation accompanied by documentation of the condition for which the reasonable accommodation is being requested, which may qualify as a disability or serious medical condition. The type of documentation required shall depend on the disability and can be, among others, medical, psychological or diagnostic. Employees shall receive the accommodation while employed with the district.  The accommodation may be updated if the employee provides new medical documentation.

When the written request for reasonable accommodation is complete and submitted to the site supervisor, that supervisor shall contact the district Americans with Disabilities Act (ADA) coordinator, who is housed in the Risk Management Department. The coordinator shall explore options and determine appropriate action.

- At no time prior to this contact shall the supervisor agree to a specific accommodation or make a financial commitment to the employee.
- Options may include, but are not limited to, the development of an employee reasonable accommodation plan, physical access request, further medical clarification, job restructuring and/or transfer.
- When the necessary accommodation is complicated or requires district funding, Finance, Facilities Construction and Design or any other appropriate department may be contacted for assistance. Any consideration of job restructuring or transfer shall be done in consultation with the Human Resources Department.

# The ADA Interactive Process

1. An employee may advise his/her supervisor of a condition that may qualify as a disability for which he or she requires accommodation.

2. The employee or supervisor contacts the ADA coordinator in the Risk Management Department.

3. In order that the ADA coordinator has a clear understanding of the potential needs of the employee, the ADA coordinator shall provide the forms to the employee to document the accommodation request and, if necessary, to authorize a release of medical information to the ADA coordinator. Forms also shall be provided to the employee's physician, or other licensed diagnostic professional, to rate the employee's ability to perform the duties and essential functions and responsibilities of his or her position, if necessary. The forms shall be based on the job description on file in the APS Human Resources Department.

4. When all necessary forms have been completed and returned to the ADA coordinator, the forms shall be reviewed to determine whether the employee is a "qualified disabled individual" as defined by the Americans with Disabilities Act.

5. The ADA coordinator shall take every reasonable step necessary to ensure that there is an interactive process and that only accommodations that can reasonably be expected to afford the qualified individual with a disability an opportunity to enjoy benefits and privileges of employment equal to those available to a similarly-situated employee without a disability and attain the same level of job performance as co-workers with similar skills and abilities.

6. If accommodations involve job modifications, the ADA coordinator shall meet with the appropriate staffing specialist in the APS Human Resources Department to discuss whether the accommodations meet the definition of reasonable accommodation in accordance with the ADA.

7. The ADA coordinator shall then schedule a meeting with the employee and supervisor, if necessary, as a part of the interactive process to discuss possible and appropriate accommodations.

8. If it is determined that the employee is a qualified individual with a disability who can perform the essential functions of his or her position but requires an accommodation, a plan shall be developed at the meeting to provide reasonable accommodations, as appropriate.

9. If equipment is needed, the ADA coordinator, or his/her designee, shall order the equipment.

10. When physical access needs arise in conjunction with the ADA Accommodation Plan that cannot be met by means available at the job site, the ADA coordinator or the site administrator shall submit a Physical Access Request form to the physical access specialist at Facilities Design and Construction. The physical access specialist shall make a site visit, in consultation with the ADA coordinator, if appropriate, to explore needs and options for a solution. The physical access specialist shall notify the ADA coordinator, if deemed appropriate, of the most reasonable solution.

11. Accommodations involving job modification or other employment-related concerns shall be managed by the site administrator and the appropriate staffing specialist in Human Resources, in consultation with the ADA coordinator.

12. Individuals who are deaf and/or hearing impaired may contact the director of interpretation to obtain sign language interpreter services. If the individual knows in advance the dates an interpreter will be needed, he or she may make the request for all known dates at the time of the initial contact. Please contact the APS department listed below as soon as you are aware of your need. Requests for interpreters must be made at least 48 hours in advance of the event.

All accommodations agreed upon and initiated shall be documented by the employee's supervisor and the ADA coordinator using the Employee Accommodation form. A copy of this form shall be sent to the ADA coordinator, who shall maintain confidential records on disability accommodations separate from the Human Resources Department personnel files. No disability records shall be kept in the Human Resources Department personnel files.

Albuquerque Public Schools shall consider all requests for accommodation individually to determine if the request is reasonable and necessary to meet the essential functions of a job.

All accommodation requests require there be an interactive process between the supervisor, employee and the district's Americans with Disabilities Act coordinator or his/her designee in order to determine if an accommodation can be made.

No supervisor shall suggest to an employee, in which they supervise, to separate from APS instead of seeking a reasonable accommodation.

# Appeal Process

If the requesting employee, their supervisor and the ADA coordinator cannot reach an agreement during the ADA interactive process, then the ADA coordinator will follow up with the employee in writing with the options discussed for reasonable accommodations. The employee may then choose to accept the accommodations offered, appeal to the superintendent, or file a complaint with EOS.

To appeal, the employee should provide, to the superintendent, in writing, the accommodation options given by the ADA coordinator along with the reasons why these accommodations will not sufficiently enable the employee to perform the essential functions of the job or to enjoy equal benefits and privileges of employment. The employee shall have ten (10) working days from the date of the follow-up letter to submit an appeal in writing to the superintendent. The superintendent or the superintendent's designee will review this information and reverse, modify or affirm the position of the ADA coordinator in response to the accommodation request. The superintendent shall have fifteen (15) working days from the date of the receipt of the appeal to inform the employee of the decision in writing. After the superintendent's review, the Albuquerque Public Schools shall consider the appeal process concluded.

If the employee chooses to file a complaint for a failure to accommodate or has any complaint regarding the ADA accommodation process or regarding any discrimination or retaliation related to a disability, the employee should contact the Equal Opportunity Services Office to follow that complaint process.

Even after submitting an appeal, a complaint, or finalizing an accommodation plan, an employee may re-initiate the ADA interactive process to address new strategies, information or accommodations at any time.

**Administrative Position:**

- Chief of Human Resources and Legal Support Services

**Department Director:**

- Director of Risk Management
- ADA Coordinator

**References:**

Legal Ref:

- Sections 504 of the Rehabilitation Act (29 U.S.C. § 794)
- Americans with Disabilities Act (42 U.S.C. §§ 12111-12117)
- New Mexico Human Rights Act (NMSA 1978 §§ 28-1-1 et seq.)

Board Policy Cross Ref.:

- **AC Nondiscrimination**  < https://www.aps.edu/about-us/policies-and-procedural-directives/policies/a-foundations-and-basic-commitments/a.03-nondiscrimination>

- **GB Equal Employment with Albuquerque Public Schools** < https://www.aps.edu/about-us/policies-and-procedural-directives/policies/g.-personnel/gb-equal-employment-with-albuquerque-public-schools>

Procedural Directive Cross Ref.:

- **Section 504/Americans with Disabilities Act: Physical Access for Students, Parents and Employees with Disabilities** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/g.-personnel/section-504-ada-physical-access-for-students-parents-and-employees-with-disabilities>
- **Disability Discrimination Students** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/disability-discrimination-students>
- **Discrimination and Harassment: Students** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/discrimination-and-harassment-students>
- **Discrimination and Harassment: Employees**  < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/g.-personnel/discrimination-and-harassment-employees>

**NSBA/NEPN Classification:**   GBA

Revised:  May 1995
Revised:  February 1996
Revised:  April 1996
Revised:  May 1997
Revised:  May, 2000
Revised:  January 2005
Reviewed: August 19, 2011
Revised: October 21, 2011
Reviewed: December 2, 2014
Reviewed: January 13, 2016
Revised: **January 15, 2016** < https://www.aps.edu/about-us/old-policies-and-procedural-directives/old-proce-dural-directives/g-personnel/section-504-ada-compliance-employees-january-2016-revision>
Reviewed: July 7, 2021
Revised: July 14, 2021



**ALBUQUERQUE**
**PUBLIC SCHOOLS**

# Section 504/ADA: Physical Access for Students, Parents, and Employees with Disabilities

## Process

The site administrator may identify a need for physical access to a specific building, office, restroom, program or other area of the site by a specific student, parent, employee or community member with a disability. This access may include:

- verification that the person has a disability preventing access in the current situation; and
- verification that the person has a legitimate need for access to that area on a continuing basis.

The site administrator shall make every reasonable effort to accommodate the person with a disability by means already available within the site.

If on-site accommodations appear inadequate (following efforts described above), the administrator will submit a Physical Access Request form to the attention of the physical access specialist, located at the **Facilities Design and Construction Department** < https://www.aps.edu/facilities-design-and-construction> .

Following receipt of a Physical Access Request form, the request shall be reviewed by the physical access specialist. The physical access specialist shall visit the site and explore the needs and options for a solution.

If warranted, the Compliance Committee may meet to suggest a solution, based on information gathered by the physical access specialist.

Suggested solutions such as assistive technology devices; acquisition or modification of equipment or devices, training, or job modifications shall be handled through the appropriate channels.

If there is a need for physical modification, the physical access specialist will submit the request to Facilities Design and Construction for an estimate.

- Facilities Design and Construction shall complete a cost estimate and provide the physical access specialist with that information.
- The physical access specialist shall complete the appropriate work order forms.
- Approval for remodeling shall be obtained from the Director of Facilities Design and Construction, or his/her designee.

- Facilities Design and Construction shall be directed to proceed with the remodeling.

Records of requests and status of those requests shall be maintained by the Facilities Design and Construction Office or the physical access specialist.

| | |
|---|---|
| Administrative Position: | Chief of Staff/Assistant Superintendent of Human Resources/Chief Operations Officer |
| Department Director: | Equal Opportunity Services/Director of Facilities Design and Construction |

References:

| | |
|---|---|
| Board Policy Cross Ref.: | A.03 Nondiscrimination |
| Procedural Directive Cross Ref.: | GB Equal Employment with Albuquerque Public Schools<br>Section 504/Americans with Disabilities Act:  Physical Access for Students, Parents and Employees with Disabilities |
| Forms Cross Ref.: | Physical Access Request Form |

Revised: May 1995
Revised: April 1996
Revised: May 1996
Revised: May 1997
**Revised: January 2005** < https://www.aps.edu/about-us/old-policies-and-procedural-directives/old-procedural-directives/j-students/section-504-ada-physical-access-for-students-parents-and-employees-with-disabilities-january-2005-revision>
Reviewed: December 2, 2014
Reviewed: January 13, 2016
Revised: January 15, 2016



**ALBUQUERQUE
PUBLIC SCHOOLS**

# Discrimination and Harassment: Employees

Albuquerque Public Schools (APS) provides equal employment opportunities for all employees and prohibits any form of discrimination/harassment in all facets of employment including, but not limited to, recruitment, job advertisement, employment, compensation, promotion, transfer, demotion, layoff, termination/discharge, or selection for district-sponsored training programs. These prohibitions apply to all employees (and students, as covered in a separate directive) and to third parties not directly subject to district-sponsored control. Examples of third parties include audiences and competitors at inter-district athletic competitions, service contractors, school visitors, and employees of businesses or organizations participating in cooperative work or school programs with the district.

Title VII of the Civil Right Act of 1964, Title IX of the Educational Amendments of 1972, the Age Discrimination in Employment Act, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New Mexico Human Rights Act and APS Board policies prohibit discrimination. Questions or concerns regarding any form of discrimination or harassment based on disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status, HIV status, pregnancy, or any other protected class as defined by law should be directed to the Office of Equal Opportunity Services.

## Definition and Examples of Harassment as Defined by Law

Generally, harassment is considered to have occurred when conduct:

1. has the intent or effect of creating an intimidating, hostile or offensive educational environment, or

2. has the intent or effect of substantially or unreasonably interfering with an employee's workplace opportunities

Harassment is offending behavior that creates a hostile environment. Both objective and subjective perspectives are considered in relation to a particular type of conduct, including the victim's age, race, gender, disability, and/or other protected class as defined by law. .

Individuals or groups are in violation of district policy if they engage in the following types of behavior (not an all-inclusive list) toward an individual on school grounds, in the workplace, at school/work-sanctioned activities or in vehicles owned/dispatched by the district:

1. making demeaning or derogatory remarks or comments directly to an individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry,

religion, age, veteran status or any other protected status as defined by law

2. displaying suggestive visual or written material of a sexual nature

3. defacing APS property or materials by writing demeaning or derogatory words, letters, names or the like directly or indirectly to an individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status or any other protected status as defined by law

4. staring or glaring or showing obscene gestures or suggestive gestures (such as touching your private parts in front of others)

5. repeatedly asking someone for a date when he/she is not interested

6. damaging, defacing, or destroying private property of any individual or group because of his/her/their disability, race, ethnicity, color, gender, sexual orientation, national origin or ancestry, religion, age, veteran status or any other protected status as defined by law

## Definition and Examples of Disability Harassment

Discriminatory behavior toward an individual with a disability may be considered harassment when that disability-focused behavior is sufficiently severe, pervasive or persistent so as to interfere with or limit the ability of the individual to participate in or benefit from the district's programs or activities.

Examples of possible disability harassment are:  excluding an individual from activities because of appearance related to disability; severe, pervasive or persistent name-calling based on disability or perceived disability; and threats or actions such as tampering with an employee's equipment or workspace and physical intimidation.

## Definition and Examples of Racial and National Origin and Ancestry Harassment

Harassment based on race or national origin may be oral, written, graphic or physical conduct relating to an individual's race, color, ethnicity or national origin (including an individual's ancestry, country of origin, or country of origin of a student's parents, family members, or ancestors that is sufficiently severe, pervasive, or persistent that it interferes with or limits the ability of an individual to participate in or benefit from the district's programs or activities.  Harassment of an immigrant or of someone who speaks another language or has a foreign accent may constitute discrimination based on national origin or race or both, depending on the circumstances. A racial or national origin basis for acts of harassment may be evident from the explicit statements of an individual or may be inferred from the surrounding circumstances.

Examples of possible race or national origin harassment are:  physical acts of aggression or assault upon another or damage to another's property that is motivated by the individual's race, color ethnicity or national origin; depending on the circumstances and context, demeaning racial jokes, taunting, racial slurs and derogatory racial

"nicknames" innuendos, or other negative or derogatory remarks of a racial nature or relating to national origin; depending on the circumstances and context, graffiti and/or slogans or visual displays such as cartoons or posters depicting racial/ethnic slurs or racial/ethnically derogatory origin.

## Definition and Examples of Gender Discrimination and Sexual Harassment (Title IX)

Discrimination may occur when an individual or individuals are treated differently specifically because of his/her/their gender, sexual orientation or pregnancy. Additionally, unintended behavior or action that ultimately results in treating a group differently because of their gender, sexual orientation or pregnancy may be a form of gender discrimination.

Sexual harassment/bullying is a form of gender discrimination that generally is considered a misuse of power. Examples of possible sexual harassment are: unwelcome pressure for sexual activity; unwelcome, sexually motivated or inappropriate physical contact; unwelcome verbal or written words or symbols directed at an individual because of gender (whether that gender is the same as the harasser or aimed at the opposite sex); and use of authority to coerce sexual favors.

Sexual harassment generally may fall under one of three categories: quid pro quo, hostile environment, and retaliatory harassment.

Sexual violence is a broad term and includes conduct that is also criminal in nature such as rape, sexual assault, stalking, child sexual abuse, sexual exploitation, human trafficking, unwanted sexual contact, sexual harassment, exposure and similar offenses. Although sexual violence may also be considered sexual harassment, criminal sexual violence against employees within the district's jurisdiction needs to be reported to the APS School Police Department and the district's Title IX director in the Office of Equal Opportunity Services (OEOS).

If needed, please review the complete district procedural directive for Gender Discrimination and Sexual Harassment for Employees (Title IX).

Please review the complete procedural directive for Gender Discrimination and Sexual Harassment (Title IX): Employees.

## Definition and Examples of Harassment Based on Religion

Targeting an individual or individuals because of his/her/their religion or religious beliefs may be a form of harassment. Examples of possible harassment based on religion are: making derogatory jokes regarding a particular religion and verbal, physical or written intimidation of an individual because of his/her/their religion.

# Definition of Harassment Based on Age

Targeting an individual or individuals because of his/her/their age may be a form of harassment. Generally, the law prohibits discrimination against and harassment of individuals over the age 40. Examples of harassment based on age might include pervasive heckling of an individual by verbal negative references to age or pervasive name-calling using terminology such as "grandpa" or "old fogey," if this behavior creates a hostile environment for the individual.

## TRAINING

Albuquerque Public Schools is committed to effectively train its APS personnel to create and maintain a safe, civil, respectful and inclusive school and work community.

## REPORTING AND COMPLAINT PROCEDURES

The following procedures apply to discrimination and harassment complaints by student(s), parent(s), legal guardian(s) employee(s), or third parties.  Examples of third parties include audiences and competitors at inter-district athletic competitions, service contractors, school visitors and employees and businesses or organizations participating in cooperative work or school programs with the district in relation to the incident(s) at issue.

These procedures shall be available in every school site, administrative office, posted on the district website and included in the employee handbook.  Furthermore, a more detailed in scope reporting and complaint procedure process can be found in the Office of Equal Opportunity Manual.

# Who may file a complaint

Any employee who believes he/she/they has been subjected to alleged discrimination and/or harassment by a student, teacher, administrator or other school personnel or third parties should report the incident(s) immediately to their supervisor or an administrator with supervisory/administrative authority.  They may also directly report to the Office of Equal Opportunity Services or any civil rights entity such as the New Mexico Human Rights Division or the Equal Employee Opportunity Commission.

Any APS employee, who becomes aware of an alleged discrimination and/or harassment incident, whether by witnessing the incident or being told of it, must report it to their immediate supervisor or to the Office of Equal Opportunity Services.

## How to file a complaint

Supervisors and administrators who have received a complaint from an employee(s) must report the alleged allegation(s) to the Office of Equal Opportunity Services.

An employee may contact the Office of Equal Opportunity Services directly.

When the district becomes aware of the existence of an alleged discrimination and/or harassment, it is obligated by law to take prompt and appropriate action, whether or not the victim wants the district to proceed or not.

For allegations that may rise to the level of sexual violence, parties may choose and/or be directed by the Office of Equal Opportunity Services to also file a police report. Individuals who file police reports should also report to the Office of Equal Opportunity Services.

## Types of Complaints

### Informal complaint resolution process

Informal resolution may be an appropriate choice when the conduct involved is not a serious or repetitive nature and disciplinary action is not required to remedy the situation. The determination is made by an administrator or designee. The informal resolution process can be ended by a complainant at any time to begin a formal complaint process. The administrator or designee shall document any informal resolution, and a copy of such documentation shall be forwarded within three (3) business days of resolution to the Office of Equal Opportunity Services, and when appropriate, the Chief of Human Resources & Legal Services.

### Formal complaint resolution process

Initiation of the formal complaint procedures requires a written complaint. The complaint form can be accessed from the Office of Equal Opportunity Services' webpage. Hard copy forms are available in the Office of Equal Opportunity Services. Individuals can also request a school or department to provide a hard copy form.

Formal complaints must be submitted in writing to the Office of Equal Opportunity Services within 180 days from the date of alleged act(s), in accordance with timelines set forth by the Office of Civil Rights, unless the time for filing is extended by the Office of Equal Opportunity Services for good cause (to be determined by the OEOS). Failure of a complaint to comply with any time limitation in the complaint procedure may result in dismissal of the complaint and/or denial of the appeal. Dismissal shall not preclude the individual's right to pursue the complaint through other appropriate external agencies.

The Office of Equal Opportunity Services shall review the formal complaint to determine whether the matter falls within the scope of these procedures.  Within then (10) business days after the complaint submission date, the Office of Equal Opportunity Services shall initiate an investigation of the matters alleged, or inform the complainant in writing that the matters alleged in the complaint are not within the jurisdiction or authority of the district to investigate and that the district will not carry out any further investigations.  If the matter does not involve allegations of discrimination within the scope of these procedures, the Office of Equal Opportunity Services shall forward the matter to the proper district administrative authority for review, if appropriate.

During either the informal or formal complaint processes interim measures, such as schedule changes, placing employees on leave and/or counseling support may be implemented to protect employees in the work setting, pending the outcome of the process.

# Investigation

The Office of Equal Opportunity Services shall oversee that an adequate, reliable and impartial investigation of the complaint is conducted by an investigator at the work site and/or where the alleged discrimination occurred.

In conducting the investigation, the investigator shall interview all parties identified in the complaint and other witnesses that the investigator determines may provide information relevant to resolving the complaint allegation(s).  Both the complainant and the respondent shall have the opportunity to identify witnesses to be interviewed and provide documentation or other evidence for the investigator to review.

The investigator shall consider the evidence compiled and take whatever additional actions necessary to complete the investigation.

The complainant and/or respondent will be informed of the status of the investigation at regular intervals.  However, at any given time during the on-going investigation process, the complainant and/or respondent may request a status update on the current complaint.  This may be requested in writing directly to the Office of Equal Opportunity Services.

# Notice of Resolution

The Office of Equal Opportunity Services shall notify both the complainant and respondent in writing within forty-five 45) business days from the complaint submission date of the results of the investigation.  In some cases, the investigation may take longer.  However, the Office of Equal Opportunity Services and investigator will make every reasonable effort to ensure that the investigation is completed within the appropriate timeline.  The Office of Equal Opportunity Services shall oversee this process.

## Appeal Rights

A party not satisfied with the resolution may submit a written appeal within ten (10) business days to the superintendent. Ten business days shall be deemed effective on the person served as the date of delivery, if personally served, faxed or email, or effective three calendar days of deposit by first-class mail if delivered by mail. This written appeal shall state with particularity the nature of the disagreement, the reasons underlying such disagreement and how the outcome would be changed by reconsideration of the determination.

The superintendent or designee shall conduct a review of the record to determine whether the preponderance of the evidence supports the determination. The superintendent or designee shall issue a written decision and mail it to the parties within fifteen (15) business days of the receipt of the appeal. The superintendent's decision is a final decision.

## Complaints to an External Agency

If a party is not satisfied at any time, including with the superintendent's decision, the party may file a complaint with the Office of Civil Rights ("OCR") in Denver, Colorado. More information is available at the Office of Civil Rights, Federal Office, 1244 Speer Blvd, Suite 310, Denver, CO 80204-3582, (303) 844-5695. Individuals may also file complaints with any other civil rights entities such as the New Mexico Human Rights Division or Equal Employment Opportunity Commission.

## Disciplinary Consequences

Any individual who violates this policy by engaging in conduct defined throughout this policy that directly or indirectly causes intimidation, harassment or physical harm to another student or employee will be subject to disciplinary action.

## False Complaints

Any individual who knowingly files a false or misleading complaint alleging harassment, discrimination or retaliation is subject to appropriate disciplinary action, including, but not limited to, dismissal of the complaint.

## Retaliation

Retaliation means some type of adversarial or punitive action taken against an individual or individuals as a result of filing a complaint or participating in the complaint process. An individual or individuals who make complaints in good faith shall be free from retaliation, coercion and reprisal in seeking resolution of their complaint. Furthermore, persons acting as witnesses to a complaint, in good faith, shall be free from reprisal. Retaliation against an individual seeking assistance at his/her/their work site, filing a complaint or participation in the investigation process is grounds for a subsequent retaliation/harassment complaint.

## Confidentiality

APS will respect the privacy of the complainant, the individual(s) against whom the complaint is filed and witnesses as much as possible, consistent with the legal obligations to investigate, take appropriate action, and conform to any legal discovery or disclosure obligations. Any information gathered during an informal procedure may be used during a formal procedure, if initiated. While there can be no assurances of complete confidentiality, complaints under this procedure will be treated as sensitive information not to be shared with others except in limited circumstances. Decisions regarding confidentiality will be made by the Office of Equal Opportunity Services.

## Legal Compliance

The Office of Equal Opportunity Services has the responsibility to monitor the compliance of state and federal laws and regulations, as well as, district policies and procedures, which follow requirements under state and federal laws, and regulations related to discrimination and harassment.

For discrimination and harassment claims contact:
Office of Equal Opportunity Services
Albuquerque Public Schools, 6400 Uptown Blvd, NE
Albuquerque, NM 87110
**https://www.aps.edu/equal-opportunity-services** < https://www.aps.edu/equal-opportunity-services>

**Administrative Position:**

- Associate Superintendent of Equity, Instruction, Innovation and Support
- Chief Operations Officer
- Chief of Human Resources & Legal Services

**Department Director:**

- Director of Title IX Programs
- Director of Equal Opportunity Services

- Executive Director of Student, Parent and Employee Service Center

**Cross References:**

Legal Reference:

- Title VI and Title VII of Civil Rights Act of 1964
- Age Discrimination in Employment Act
- Section 504 of the Rehabilitation Act of 1973
- Americans with Disabilities Act
- Title IX of the Education Amendments of 1972
- The Family Educational Rights and Privacy Act
- New Mexico Human Rights Act (NMSA § 28-1-7)
- 6.10.3 NMAC
- Children's Code Article 4: Child Abuse and Neglect, 32A-4-1 through 32A-4-34

Board Policy Cross Ref:

- **AC Nondiscrimination** < https://www.aps.edu/about-us/policies-and-procedural-directives/policies/a-foundations-and-basic-commitments/a.03-nondiscrimination>

Procedural Directive Cross Ref:

- **Section 504/ADA: Physical Access for Students, Parents, and Employees with Disabilities** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/section-504-ada-physical-access-for-students-parents-and-employees-with-disabilities>
- **D** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/disability-harassment-students> **isability Discrimination: Students** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/disability-discrimination-students>
- **Discrimination and Harassment: Students** < https://www.aps.edu/about-us/policies-and-proce-dural-directives/procedural-directives/j.-students/discrimination-and-harassment-students>
- **Gender Discrimination and Sexual Harassment (Title IX): Employees** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/g.-personnel/gender-discrimination-and-sexual-harassment-title-ix-employees>
- **Gender Discrimination and Sexual Harassment (Title IX): Students** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/gender-discrimination-and-sex-ual-harassment-students>
- **Non-Discrimination for Students: Gender Identity and Expression** < https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/non-discrimination-for-stu-

dents-gender-identity-and-expression>

Forms:

Discrimination and/or Harassment Complaint Form (Office of Equal Opportunity Manual)

Revised: **January 2005** < https://www.aps.edu/about-us/old-policies-and-procedural-directives/old-procedural-directives/g-personnel/discrimination-and-harassment-employees-january-2005-revision>

Reviewed: December 11, 2019

Revised: January 17, 2020

# Exhibit 32

Location number: **485**
Employee ID: **126545**
Position: **01**

### 2020-2021 CERTIFIED (LICENSED) SCHOOL EMPLOYEE CONTRACT

This is a contract of employment between the Albuquerque Municipal School District No. 12, Counties of Bernalillo and Sandoval, New Mexico, (the "District") and **REED, TODD** (the "Employee").

A. The District employs the Employee for the school year **2020-2021** beginning **08/05/2020**, and ending on the date specified in the District's calendar for the **2020-2021** school year, subject to adjustment for required makeup days.
B. The Employee shall fulfill the duties assigned at such times and places as designated by the Superintendent or her designee.
C. In accordance with the approved salary schedule, for use during the school year **2020-2021**, the Employee's salary is [based upon the following factors: **MASTER'S** degree, **00** additional approved semester hours, and **18** years of allowable experience] is **$60618.06**, less required or authorized deductions. All of the above are subject to verification and, in the event of any error or incorrect computation, appropriate adjustment of this contract will be made after consultation with the Employee.

The contract salary for the school year **2020-2021** shall be paid to the Employee in **26** installments. The first installment shall be due and payable on **08/14/2020**. The contract salary is based upon a school year of **184** days subject to budget approval. For each day's absence from duty not included in sick leave or otherwise compensated for, deductions shall be made in accordance with the District's Procedural Directive.

THIS IS YOUR BASE CONTRACT WHICH DOES NOT INCLUDE DIFFERENTIALS OR EXTENDED ASSIGNMENTS. NO UPDATED CONTRACT(S) WILL BE ISSUED TO YOU THIS SCHOOL YEAR, UNLESS YOUR JOB CLASSIFICATION CHANGES.

THIS CONTRACT IS BASED ON WORKING **6.50** HOURS PER DAY.

The District may, but shall not be required to, increase prospectively, but not retroactively, the salary for any school year governed by the terms of this contract if revenues are available to the school district for that school year. Any increase is subject to budgetary approval by the Public Education Department. Notwithstanding the above, the District shall further have the authority, for any school year governed by the terms of this contract and for which a salary increase is mandated if the school district meets conditions as specified by the legislature of New Mexico, to implement salary adjustments during the school year in accordance with a salary schedule adopted by the District in accordance with the legislative guidelines for that year. Any adjustment is subject to budgetary approval by the Public Education Department.
D. This contract and the parties hereto are and shall continue to be subject to applicable laws of the state of New Mexico and the rules and regulations of the department and District as they may exist. This contract may be cancelled by the District for cause, including unsatisfactory work performance, incompetence, insubordination, physical or mental inability to perform the required duties or for any other just cause, provided, that any such cancellation may be effected only in accordance with applicable New Mexico statutes and any applicable rules and regulations of the department and District Policies and Procedural Directives.
E. This contract may also be cancelled by the District for cause not personal to the Employee when a reduction in personnel is required as a result of decreased enrollment or a decrease or revision of educational programs or insufficient legislative appropriation or authorization being made by the state and/or federal government for the performance of this contract, in accordance with the New Mexico statutes and any applicable rules and regulations of the Public Education Department and policies and procedural directives of the Board of education and the District, provided there is no other position for which the Employee is qualified, consistent with the academic necessities of the district.
F. The Employee shall give the District thirty (30) calendar days written notice of intention to resign. Failure to give such thirty (30) calendar day notice shall entitle the District, in its discretion, to file a written complaint with the secretary requesting suspension or revocation of the Employee's license.
G. The Employee shall furnish the District the following: (a) a valid license for the position to be held; (b) an official transcript showing the education record and training of the Employee, (c) suitable evidence of date of birth; (d) such health certificates as may be required by law; and (e) any other documents as may be required by law. Failure to furnish any of the foregoing items at the required time may result in cancellation of this contract in accordance with the New Mexico statutes and any applicable rules and regulations of the department and District.
H. The Employee shall accept or reject any offer of re-employment within fifteen (15) calendar days from receipt of such offer of re-employment.

ALBUQUERQUE MUNICIPAL SCHOOL DISTRICT NO. 12

By: _(signature)_                         Date of Execution: **08/23/2020**

_____
Interim Superintendent

Employee: **Todd Reed**            Date of Execution: **08/24/2020**  (MM/DD/YYYY)
**This contract must be electronically signed.**
If you feel there is a discrepancy, make comments below, complete the form, and submit.
Comments:

Task Notes